UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE COMPANY,

                Interpleader Plaintiff,

                -v-

TYCO INTERNATIONAL LTD., L. DENNIS
KOZLOWSKI, MARK A. BELNICK, MARK
H. SWARTZ, FRANK E. WALSH, JR., and
JOHN DOES 1-50,

                Interpleader Defendants.

L. DENNIS KOZLOWSKI and MARK H. SWARTZ,

                Third-Party Plaintiffs,

                -v-

TWIN CITY FIRE INSURANCE COMPANY,

                Third-Party Defendant.

MARK A. BELNICK,

                Third-Party Plaintiff,

                -v-

TWIN CITY FIRE INSURANCE COMPANY,

                Third-Party Defendant.

Case No. 04-CV-9086 (KMK)

OPINION AND ORDER

Appearances:

Paul B. Sweeney, Esq.
David J. Hensler, Esq.
David Newmann, Esq.
Michael Steinberg, Esq.
Hogan & Hartson, L.L.P.
New York, New York and Washington, D.C.
*Counsel for Interpleader Plaintiff Federal Insurance Company*

Nicholas J. Zoogman, Esq.
John P. Winsbro, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
New York, New York
*Counsel for Interpleader Defendant and Third-Party Plaintiff Mark A. Belnick*

Jean M. Farrell, Esq.
Jeffrey E. Glen, Esq.
Anderson Kill & Olick, P.C.
New York, New York
*Counsel for Interpleader Defendant and Third-Party Plaintiff L. Dennis Kozlowski*

Milton Thrum, Esq.
Stacy Steinberg, Esq.
Molod Spitz & DeSantis, P.C.
New York, New York
*Counsel for Interpleader Defendant and Third-Party Plaintiff Mark H. Swartz*

Kathleen Donohue, Esq.
Charles D. Donohue, Esq.
Jennifer A. Klear, Esq.
Douglas M. Mangel, Esq.
Brian A. Coleman, Esq.
Alison M. Jarandeh, Esq.
Drinker Biddle & Reath LLP
New York, New York and Washington, D.C.
*Counsel for Third-Party Defendant Twin City Fire Insurance Company*

KENNETH M. KARAS, District Judge:

Third-Party Defendant Twin City Fire Insurance Company ("Twin City") removed the

present action, *Federal Insurance Co. v. Tyco et al.*, Index No. 04/601416 (N.Y. Sup. Ct. 2004)

("Interpleader Action") from state court.  Third-Party Plaintiffs Mark A. Belnick ("Belnick"), L. Dennis Kozlowski ("Kozlowski"), Mark H. Swartz ("Swartz"), and Frank E. Walsh, Jr. ("Walsh") move to remand this case back to state court.  Specifically, Third-Party Plaintiffs maintain that:  (1) Twin City's removal of the Interpleader Action was improper because third-party defendants may not remove under 28 U.S.C. § 1441(a); and (2) the Court does not have original jurisdiction over the Interpleader Action pursuant to the interpleader statute, 28 U.S.C. § 1335, because Federal Insurance Company ("Federal") has not deposited the amount in controversy into the registry of the court.   Third-Party Plaintiffs also seek attorneys' fees pursuant to 28 U.S.C. § 1447(c).

Twin City opposes the motion, arguing that:  (1) the remand motion is untimely; (2) Twin City, even as a third-party defendant, may remove this case under § 1441(a); and (3) because Twin City was fraudulently joined, a proper realignment supports both Twin City's right to remove and federal jurisdiction over this case.

For the reasons stated herein, the Motion to Remand is GRANTED, but the Motion for Attorneys' Fees is DENIED.

## I.  Background

### A.  Facts

*The Insured and Their Legal Troubles*

This action arises from insurance coverage disputes between Interpleader Plaintiff Federal and Third-Party Defendant Twin City and their insured, Interpleader Defendants/Third-Party

Plaintiffs Belnick, Kozlowski, Swartz, and Walsh.[1]

Belnick is the former Executive Vice President and Chief Corporate Counsel of Tyco International Ltd. ("Tyco") and is alleged to be a New York resident.[2]  (Interpleader Compl. ¶ 5) Kozlowski is the former CEO and Chairman of Tyco, and also a resident of Florida.  Swartz is the former Executive Vice President and CFO of Tyco and a resident of Florida, while Walsh is a former Tyco Director and a resident of New Jersey.  Tyco is incorporated under the laws of Bermuda, and maintains executive offices in New York.

Beginning in or around late 2000, allegations arose that Tyco engaged in questionable accounting practices.  After these allegations arose, Tyco issued restatements of its earnings for fiscal year 1999 and the first half of fiscal year 2000.  A criminal investigation resulted in indictments of Kozlowski, Walsh, Swartz, and Belnick, who were then prosecuted by the New York County District Attorney's Office.  This was soon followed by civil actions initiated by the Securities and Exchange Commission against these same four individuals, and an avalanche of ERISA and shareholder lawsuits in New York and around the country against Tyco and several of its directors and officers ("Underlying Actions").  *See Federal Ins. Co. v. Tyco Int'l Ltd.*, 2

---

[1] This is one of two actions before this Court related to the coverage disputes between the insured and the insurance carriers.  The other action is *Belnick v. Twin City Fire Insurance Co.*, 04 Civ. 7998 ("Belnick Action"), which was filed in New York Supreme Court and removed to this Court by Twin City before this Interpleader Action was removed.  Accompanying this Opinion is an Order staying consideration of Belnick's application to remand that action based on abstention principles and placing that case on the suspense calendar pending any motion by Twin City to challenge in state court the joinder of the Third-Party Actions in the Interpleader Action in state court.

[2] It bears noting that in the Belnick Action complaint against Twin City, Belnick claims to be a Utah resident, but also admits to maintaining a residence in New York.  (Belnick Compl. Index No. 603293-04 ¶ 1) This complaint is discussed in further detail below.

Misc. 3d 1006(A), 2004 WL 583829, at *1 (N.Y. Sup. Ct. Mar. 5, 2004).

The first criminal trial resulted in an acquittal for Belnick and a hung jury for Kozlowski and Swartz.[3]  The second criminal trial resulted in the conviction of Kozlowski and Swartz, who, in September 2005, were sentenced to eight and one-third to twenty-five years' imprisonment, and were ordered to pay approximately $170 million in fines and restitution.  (Letter from Nicholas J. Zoogman to the Court, Oct. 21, 2005)

*The Insurance Carriers and Their Policies*

Interpleader Plaintiff Federal is an insurance company organized under the laws of Indiana with its principal place of business in New Jersey.  Third-Party Defendant Twin City is an insurance company also incorporated and existing under the laws of Indiana, with its principal place of business in Connecticut.  Twin City also does business in New York.

Before its legal troubles began, Tyco purchased certain primary and excess directors and officers ("D&O") liability insurance policies that provided coverage to Tyco and its officers and directors.  Pursuant to Executive Protection Policy, No. 8121-34-42 ("Federal Policy"), Federal is the primary carrier of a policy sold to Tyco for the period March 15, 2001 to March 15, 2003, which provides $25 million in coverage after the satisfaction by Tyco of a $10 million retention.  (Zoogman Aff. ¶ 10, Oct. 12, 2004 (hereinafter "Zoogman Aff."); Zoogman Aff. Ex. 4)[4]  The Federal Policy provides that it will pay on behalf of each insured all "Loss" for which an insured person "is not indemnified by the Insured Organization and which the Insured Person becomes

---

[3]Walsh pled guilty in New York State Supreme Court in December 2002 to securities fraud, and settled the SEC's securities fraud action.

[4]The Zoogman Affidavit was submitted in connection with the Belnick Action, but contains facts directly relevant to the instant motion.

legally obligated to pay on account of any Claim first made against him."  (Zoogman Aff. ¶ 16; Zoogman Aff. Ex. 4, Executive Liab. & Indem. 3)  The Federal Policy defines "Loss" to include, *inter alia*, "Defense Costs," which, in turn, is defined to include "reasonable costs, charges, fees (including but not limited to attorneys' fees and expert fees) and expenses . . . incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds." (Zoogman Aff. ¶ 16; Zoogman Aff. Ex. 4, Executive Liab. & Indem. 10)

In addition, Tyco purchased excess coverage through several other carriers that ultimately provided over $200 million in coverage in excess of the coverage provided by the Federal Policy. Twin City is the first excess carrier.  The Twin City Excess Financial Products Insurance Policy No. NDA 0144927-01 ("Twin City Policy"), like the other excess policies, contains a "follow-form" provision stating:

> This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend *except as otherwise provided herein*) as are contained in or as may be added to the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by the endorsement to any Underlying Excess Policy(ies).

(Zoogman Aff. Ex. 3, Excess Fin. Prod. Ins. Policy III.A) (emphasis added)  The Twin City Policy initially covered the period between March 15, 2001 and March 15, 2002.  This period was extended by Endorsement Number Six to March 15, 2003, after which the policy apparently was amended again to account for the recent allegations of wrongdoing against Tyco's directors and officers.  (Zoogman Aff. Ex. 3, Endorsement Nos. 6, 7; Twin City Opp'n Mem. 3)  For example, Endorsement Numbers Nine and Ten reduce Twin City's liability to $12.5 million from

$25 million, with the remaining $12.5 million to be self-insured by Tyco, except where Tyco is prohibited by Bermuda law to indemnify its own directors and officers. Most importantly, Endorsement Number Eleven amends the Twin City Policy to explicitly exclude coverage for Swartz, Kozlowski, Belnick, and Walsh. Not surprisingly, it is this provision that has drawn the bulk of the Third-Party Plaintiffs' fire.

B. Procedural History

*The Rescission Action*

The procedural history of this dispute is a long and winding road. The journey began in 2003 when Kozlowski notified Federal of the Underlying Actions pending against him and demanded that Federal provide him with legal representation or pay his defense costs. On February 13, 2003, Federal responded by rescinding its policy and returned the premiums on the ground that Kozlowski had made material misrepresentations in his insurance application. Federal also responded by commencing an action in the New York Supreme Court, *Federal Insurance Co. v. Tyco et al.*, Index. No. 6000507/03 (N.Y. Sup. Ct.) ("Rescission Action"), seeking a declaration that the Federal Policy was rescinded and void *ab initio*, or, in the alternative, that certain exclusions bar some of the insured from coverage. *See Fed. Ins. Co. v. Tyco Int'l*, 2 Misc. 3d 1006(A), 2004 WL 583829 (N.Y. Sup. 2004). Federal initially named Tyco and numerous other Tyco directors and officers as defendants, but Federal amended its complaint to name only Kozlowski, Swartz, Belnick, and Walsh as defendants. Belnick settled the action with Federal, with Federal ultimately agreeing to fund the cost of his defense. As a result, he was dismissed without prejudice.

The remaining defendants (Kozlowski, Swartz, and Walsh) counterclaimed, and

7

Kozlowski brought a motion for partial summary judgment seeking a declaration that Federal was required to defend him, or pay his defense costs on an on-going basis, in certain of the Underlying Actions, including the criminal action in New York State Supreme Court. *See Fed. Ins. Co.*, 2004 WL 583829, at *1-2. On March 5, 2004, Justice Helen Freeman of the New York Supreme Court granted Kozlowski's partial motion for summary judgment. *Id.* at * 5-6. The decision was largely upheld on appeal. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 792 N.Y.S.2d 397 (N.Y. App. Div. 2005).[5]

Subsequent to the return of the case to New York Supreme Court, as noted, Kozlowski was convicted on twenty-two felony counts based on millions of dollars of fraud. He nonetheless filed a motion for summary judgment in the Rescission Action seeking $17.8 million in defense costs as a result of the criminal action. (Letter from David Newmann to the Court, Nov. 10, 2005) Citing Kozlowski's conviction, Federal has opposed Kozlowski's motion and has filed its own summary judgment motion. (Letter from David Newmann to the Court, Nov. 10, 2005) Belnick and Tyco have moved to intervene in the Rescission Action for the sole purpose of opposing Kozlowski's motion. (Letter from Nicholas J. Zoogman to the Court, Oct. 21, 2005) Apparently, Kozlowski has not responded to the motions made on behalf of Federal, Belnick, or Tyco. (Letter from Newmann to the Court, Nov. 10, 2005; Letter from Zoogman to the Court, Oct. 21, 2005). These motions are *sub judice*.

*The Interpleader Action*

---

[5] In affirming the lower court's decision, the First Department modified the judgment below "to declare that [Federal's] obligations with respect to the criminal proceeding and the securities action are limited to defense costs incurred, subject to apportionment and reimbursement for the cost of the defense of non-covered claims." *Fed. Ins. Co.*, 792 N.Y.S.2d at 404.

Federal also commenced the second action in this story, which was the instant Interpleader Action before Justice Freedman, *Federal Insurance Co. v. Tyco et al.*, Index No. 04/601416 (N.Y. Sup. Ct.).  This is a defensive interpleader action, brought pursuant to N.Y. C.P.L.R. § 1006(b), wherein Federal "contends that, for reasons set forth in the First Amended Complaint in the Rescission Action, the Rescission Action Defendants are not entitled to the payment of any Defense Expenses or other Loss as defined by" the Federal Policy.  (Interpleader Compl. ¶ 19)  However, based on Justice Freedman's decision granting Kozlowski's summary judgment motion and other litigation involving the insured, including Tyco and the Interpleader Defendants/Third-Party Plaintiffs, Federal expressed concern about being subject to multiple adverse claims that would exceed the limits of the Federal Policy.  (Interpleader Compl. ¶ 21)  To address this concern, Federal sought, among other things, permission to pay into court defense costs attributable to Tyco and the other Interpleader Defendants/Third-Party Plaintiffs, and an order requiring Tyco and the other Interpleader Defendants/Third-Party Plaintiffs to interplead their respective adverse claims to any amounts so deposited.  (Interpleader Compl. ¶ 22(c))

At a September 9, 2004 status conference in the Interpleader Action, there was extensive discussion about impleading any excess carriers which might be part of the "tower" of coverage provided to Tyco and its officers and directors.  (Zoogman Aff. Ex. 8; Zoogman Aff. Ex. 9, Status Conf. Tr. 10-14)  Federal claimed it had no basis to implead the excess carriers, but several of the insured, including Kozlowski and Belnick, claimed they could.  At the hearing, Justice Freedman concluded that the parties should "bring them [the excess carriers] in." (Zoogman Aff. Ex. 8; Zoogman Aff. Ex. 9, Status Conf. Tr. 14)

On September 28, 2004, ten days after the initiation of the Bermuda action, discussed

below, Kozlowski filed motion papers seeking to join Twin City and all other potentially liable excess insurance companies as third-party defendants in the Interpleader Action. (Twin City Opp'n Mem. 7, Ex. E; Zoogman Aff. ¶ 42) Kozlowski explained that "it appears from discussions amongst counsel that the total amount of defense costs thus far incurred . . . under the Federal policy . . . exceeds the limits of the policy." Kozlowski argued that he had a right to have the entire "tower of insurance" maintained, and thus all excess carriers (with one exception) should be a party to the action. (Twin City Opp'n Mem. Ex. E ¶ 8)

On October 12, 2004, Kozlowski and Swartz filed a proposed Order to Show Cause, requesting Justice Freedman expedite consideration of the proposed joinder of Twin City to the Interpleader Action. On October 26, 2004, Justice Freedman granted Kozlowski and Swartz leave to add Twin City to the state court action. Justice Freedman's Order reads:

> Defendants, Kozlowski and Swartz move to join Twin City Fire Insurance Co. ("Twin City") as a defendant in this interpleader action brought by Federal Insurance Company to determine which of various defendants are entitled to its insurance coverage. Twin City is one of the excess insurers affording coverage to some or all of the defendants, and is thus potentially liable for some of or similar coverage to that plaintiff is obligated to afford.
>
> Pursuant to CPLR §1007, " . . . a defendant may proceed against a person not a party who is or may be liable to that defendant for all or part of plaintiff's claim against that defendant by filing a third party summons . . . ." The claim is denominated a third party complaint.
>
> Plaintiff, Federal Insurance Co. opposes the impleader on the ground that it owes nothing to Twin City or any other excess insurer. However, this "vouching in" type of provision of CPLR 1007 does not require plaintiff to have an obligation to any third party. Rather, it provides that where any part of the claim against the plaintiff may be satisfied by a third party (as here), third party impleader is permissible. *See Vincent Alexander: Practice*

> *Commentaries, 7B McKinney's Cons.L. § 1007, Page 42 et seq.*
> This is consistent with the view of CPLR § 1007 that was adopted
> in the case of *George Cohen Agency v. Donald S. Perlman Agency*,
> 51 N.Y.2d 358 (1980) where the court denied dismissal of a third
> party claim on the ground that a party may bring before the court
> another who had shared responsibility. The fact that such action
> affects removal does not negate its validity. *See George Cohen
> Agency, supra.*
>
> Based on the foregoing, assuming that defendants Swartz and
> Kozlowski have served answers to plaintiff's complaint, they may
> serve a third party complaint against Twin City.
>
> This is the decision of the Court.

*Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 5 Misc.3d 1022(A), 2004 WL 2805648, at *1 (N.Y. Sup. Ct. Oct.

26, 2004). On or about November 4, 2004, Kozlowski, Swartz, and Walsh filed a Third Party

Complaint against Twin City ("Kozlowski/Swartz Third Party Action"). Likewise, on or about

November 16, 2004, Belnick filed a Third-Party Complaint against Twin City ("Belnick Third-

Party Action").

*Bermuda Action*

The third action in this string of litigation was brought by Twin City when, on or about

September 17, 2004, Twin City commenced an action in the Supreme Court of Bermuda (2004

No. 294), seeking certain declaratory relief absolving it from providing coverage to Swartz,

Kozlowski, Belnick, and/or Walsh ("the Bermuda Action"). (Twin City Opp'n Mem. Ex. D)

Specifically, Twin City contended that in March 2003, Twin City and Tyco agreed, through the

issuance of Endorsement Number Eleven, to retroactively restructure portions of the insurance

policy to exclude coverage for Swartz, Kozlowski, Belnick, and Walsh. As relief, Twin City

sought a declaration that Endorsement Number Eleven is valid and binding upon Tyco,

Kozlowski, Swartz, Belnick, and Walsh, and a declaration that Twin City has no obligation and is not liable under the policy to provide coverage to those listed individuals.

_____ *Belnick Action*

The fourth and final coverage action was filed on or about October 8, 2004 by Belnick in the Supreme Court of New York (Index No. 04603293) ("Belnick Action").[6] Among other things, this action alleges that Twin City breached its obligations under the Twin City policy by refusing to defend the insured and that Twin City breached an implied covenant of good faith and fair dealing. Specifically, Belnick alleges breach of the covenant based on the negotiation of Endorsement Number Eleven. For relief, this action seeks a declaratory judgment that Twin City is obligated to pay defense costs of Belnick under the excess policies, and seeks to enjoin the Bermuda Action.

As Twin City notes, the third-party complaints in both the Kozlowski and Belnick Third-Party Actions are substantively identical to the complaints filed by those same parties in the Kozlowski and Belnick Actions. In fact, apart from renaming Kozlowski/Swartz and Belnick as "Interpleader defendants and Third-Party Plaintiffs" rather than "Plaintiffs," and changing Twin City from a "Defendant" to a "Third-Party Defendant," the Third-Party Complaints are in many parts exactly the same as the prior Complaints. (Twin City Opp'n Mem. 8 (citing for comparison

_____

[6]Once upon a time, there was a fifth case. On October 12, 2004, Kozlowski and Swartz filed a complaint against Twin City (Index No. 04603345) that substantially mirrored the allegations made by Belnick. On October 14, 2004, Twin City filed a notice of removal in *Kozlowski et al. v. Twin City Fire Ins. Co.*, 04-cv-08084 ("Kozlowski Action"), which was assigned to this Court as related to the Belnick Action. Kozlowski and Swartz apparently filed a notice of discontinuance of the Kozlowski Action the same or the following day after filing it, and Twin City subsequently withdrew its removal upon receiving notice that the case had been discontinued.

Ex. F. *with* Ex. K; Ex. G *with* Ex. J))

Following removal, Belnick brought a motion to remand pursuant to the abstention doctrine.[7]  Following oral argument, Belnick expressed an intention to seek dismissal of the claims without prejudice.  Twin City, however, opposed such a dismissal, having already answered and filed a counterclaim for declaratory relief.  Therefore, the Court issued an Order providing that Belnick submit the stipulation of dismissal, and setting a briefing schedule for Belnick's motion to stay Twin City's counterclaims.  Belnick subsequently and timely submitted (but did not formally file) a notice of dismissal signed by counsel for Belnick, Walsh, and Swartz, but not Kozlowski and Twin City.  Prior to the commencement of the briefing schedule, the Interpleader Action was removed.  As a result, the Court issued an Order indicating that "[i]n light of the removal of the related action . . . the scheduling order . . . governing Belnick's motion to stay Twin City's counterclaim, is hereby vacated."  (Order, No. 04 Civ. 7998, Docket No. 23, Nov. 23, 2004)  Thus, the issue of the Belnick Action is still pending and is addressed in a separate order, also signed today.

*Removal of the Interpleader Action and the Question of Remand*

On November 17, 2004, Twin City filed a Notice of Removal of the Interpleader Action.  Twin City outlines a number of bases for removal.  First, Twin City maintained that it "may remove to this Court pursuant to 28 U.S.C. § 1441 because it was fraudulently joined in the State Court Action, in that it was named as a defendant . . . despite the fact that there is no allegation of third-party liability against Twin City in either pleading."  (Notice of Removal ¶ 5)  Twin City contends there is diversity jurisdiction over the Kozlowski Third-Party Action and the Belnick

---

[7] Belnick styled his argument as seeking an "Order to Show Cause to Remand."

Third-Party Action pursuant to 28 U.S.C. § 1332.  (Notice of Removal ¶ 5)  Twin City indicated

that "it will not object to the remand of the State Court Action . . . provided that the Court retain

jurisdiction over the Kozlowski Third-Party Action and the Belnick Third-Party Action."

(Notice of Removal ¶ 5)

Second, Twin City argued that "[a]lternatively, this action may be removed to this Court

by Twin City because this Court has original jurisdiction over the State Court Action pursuant to

28 U.S.C. § 1335."  (Notice of Removal ¶ 6)

Finally, Twin City maintained that "this action may be removed by this Court to Twin

City because the true plaintiffs, to wit, Mssrs. Kozlowski, Swartz, Belnick and Walsh are of

diverse citizenship in contrast to the true defendant, Twin City, and the amount in controversy

exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs,

such that jurisdiction is proper under 28 U.S.C. § 1332."  (Notice of Removal ¶ 7)

On December 16, 2004, Third-Party Plaintiffs filed a motion to remand, which the Court

denied without prejudice for failure to comply with the Court's individual practices requiring

pre-motion letters and a pre-motion conference.  (Docket Nos. 8 ,9)  A letter requesting a pre-

motion conference was sent by Kozlowski's counsel on January 5, 2005, and following the pre-

motion conference, a briefing schedule was set.

Because of the obvious connection between the Interpleader and Belnick Actions, on

August 9, 2005, the Court issued an Order providing, in relevant part:

> Based on the issues raised at the oral argument on July 25, 2005, as
> well as the issues raised in the related action, *Belnick v. Twin City*
> *Fire Insurance Company*, 04 Civ. 7998, the Court directs the
> parties to submit supplemental briefs on the question of whether
> abstention is appropriate in either this action, 04 Civ. 9086, or the

> Belnick action, 04 Civ. 7998.  In addressing this issue, the parties
> should consider how retention of jurisdiction over one of the cases
> might affect or not affect the decision to abstain in the related
> action.

(Order, Aug. 9, 2005)

On November 10, 2005, Federal requested the Court to immediately remand the

underlying Interpleader Action to Justice Freedman so that it could make payments to certain of

the insured, including Tyco and Belnick, which had reached an agreement with Federal regarding

approximately $12.3 million in defense costs and fees.  The Court then inquired of all parties,

including Twin City, all of whom consented to a remand of the underlying Interpleader Action.[8]

Accordingly, on November 14, 2005, the Court ordered that the Interpleader Complaint filed by

Federal be remanded to the Supreme Court of New York, New York County, while retaining the

two Third-Party Actions filed by Belnick and Kozlowski/Swartz.

Based on the consensual remand of the underlying Interpleader Action, in an Order dated

January 9, 2006, the Court then directed the parties to brief the question of what impact, if any,

the remand of the Interpleader Action had on the remand motions filed by Belnick, Kozlowski,

and Swartz.  The parties timely submitted their memoranda of law and the issue is now fully

submitted.

## II.  Discussion

### A.  Removal and Remand

---

[8]During the November 14, 2005 conference, the parties advised the Court of the new
round of litigation involving Kozlowski, Federal, Tyco, and Belnick, which some suggested may
have avoided exhaustion of the limits of the Federal Policy.  Subsequent conferences with the
parties have made clear to the Court, however, that it is in fact foreseeable that the Federal Policy
will be exhausted, thus requiring the parties to resolve their differences over the Twin City
Policy.

1. Applicable Principles

        Twin City seeks to remove to this Court a case that was initially filed in New York State

Supreme Court.  In determining the validity of Twin City's removal, the Court must answer two

questions:  Does Twin City have a right to remove this action under the federal removal statute,

and, if so, does this Court have jurisdiction over the removed case?  In answering these

questions, the Court starts with the baseline proposition that federal courts are courts of limited

jurisdiction.  *See Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).  In this context, this

means that the "right of a party to remove a case from state to federal court is a purely statutory

right and, as such, is dependent upon the will of Congress for its continued existence." *Chase v.*

*N. Am. Sys., Inc.*, 523 F. Supp. 378, 380 (W.D. Pa. 1981).  Accordingly, "removal jurisdiction

exists in a given case only when that jurisdiction is expressly conferred on the courts by

Congress." *Id.*  Among other things, "[a]dherence to these principles is particularly demanded in

the context of removal, where considerations of comity play an important role." *Johnston v. St.*

*Paul Fire & Marine Ins. Co.*, 134 F. Supp. 2d 879, 880 (E.D. Mich. 2001).  Indeed, "[o]ut of

respect for the independence of state courts, and in order to control the federal docket, 'federal

courts construe the removal statute narrowly, resolving any doubts against removability.'" *Stan*

*Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003)

(quoting *Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)); *see also*

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (federalism concerns call for

"the strict construction" of the removal statute); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269,

274 (2d Cir. 1994) ("In light of the congressional intent to restrict federal court jurisdiction, as

well as the importance of preserving the independence of state governments, federal courts

construe the removal statute narrowly, resolving any doubts against removability."); *Zerafa v. Montefiore Hosp. Hous. Co., Inc.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) ("Removal jurisdiction is strictly construed insasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum."); *Vasura v. Acands*, 84 F. Supp. 2d 531, 533 (S.D.N.Y. 2000) ("In resolving a motion to remand, courts must be mindful of considerations of federalism and the limited jurisdiction conferred on subject matter jurisdiction courts and should 'strictly construe[]' the federal removal statute, resolving all doubts 'in favor of remand.'") (quoting *Miller v. First Security Invs., Inc.*, 30 F. Supp. 2d 347, 350 (E.D.N.Y. 1998)).

Aside from federalism principles, one practical consideration for the heavy presumption against suspect removal is that it conserves judicial resources. As one court has explained: "The question of subject-matter jurisdiction can, after all, be raised by the parties or even by the court at any stage of the proceedings. It would therefore ill behoove us to retain the action if there is the slightest doubt as to our power to entertain it, and then face the possibility of jurisdictional dismissal by a higher court after the litigation had been fully concluded." *Am. Mut. Liab. Ins. Co. v. The Flintkote Co.*, 565 F. Supp. 843, 850 (S.D.N.Y. 1983) (citations omitted). Therefore, "[w]hen the removal of an action to federal court is contested, 'the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.''" *Stan Winston Creatures*, 314 F. Supp. 2d at 179 (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F. 2d 651, 655 (2d Cir. 1979)). "This is particularly so where the removing party seeks to oppose a motion to remand on a claim of fraudulent joinder." *Am. Mut. Liab. Ins. Co.*, 565 F. Supp. at 845.

Another guiding principle is that the propriety of removal is to be determined by the pleadings at the time of removal. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one was to be determined according to the plaintiffs' pleading at the time of the petition for removal."); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 399 F. Supp. 2d 356, 363 (S.D.N.Y. 2005) ("A court must thus consider the complaint at the time of removal to determine if removal was appropriate in the first place. . . . There is a 'judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical moves.'") (quoting *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965)); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 889 n.5 (S.D. Ind. 2003) ("[R]emoval must be determined on the basis of the plaintiffs' pleadings at the time of removal, without regard to subsequent development."). Thus, for example, a post-removal settlement with a non-diverse party does not cure a removal that was defective at the time it was filed. *See Vasura*, 84 F. Supp. 2d at 536 ("It is not relevant in determining the propriety of removal – which is measured as of the date of removal – that diversity was later created by dismissal of the non-diverse defendant. If the removal was not proper in the first instance, the state court was never divested of jurisdiction and the federal court consequently has no jurisdiction to exercise."). With these principles in mind, the Court now turns to the merits of the remand motion.

## 2. Timing of Motion to Remand

Twin City initially argues that Third-Party Plaintiffs waived their right to challenge Twin City's right of removal because their motion was untimely. (Twin City Opp'n Mem. 25) Title 28, United States Code, Section 1447(c) provides, in pertinent part:

> A motion to remand the case on the basis of any defect other than
> lack of subject matter jurisdiction must be made within 30 days
> after the filing of the notice of removal under section 1446(a).  If at
> any time before final judgment it appears that the district court
> lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).  Thus, "all motions for remand—except those based on lack of subject

matter jurisdiction—must be made within 30 days after removal or they are waived." *Hamilton*

*v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993).[9]

    "Congress placed a strict time limit on motions to remand in order to prevent the delay,

inefficiency, and unfairness resulting from late-stage, forum-shopping remand motions."

*Pierpoint v. Barnes*, 94 F.3d 813, 817 (2d Cir. 1986).[10]  While "[t]his deadline is plainly

mandatory," the Second Circuit has "never held it to be jurisdictional, nor is there any statutory

language that purports to limit the court's power to consider an overdue motion."  *Phoenix*

*Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005).

    In this case, Third-Party Plaintiffs timely filed their original motion to remand, even if

"one day prior to the expiration of the 30-day statutory deadline of 28 U.S.C. § 1447(c)."  (Twin

City Opp'n Mem. 8)  The motion, however, was denied without prejudice merely for failure to

---

[9]Previously the "applicable version of section 1447(c) . . . read 'a motion to remand the case on the basis of *any defect in removal procedure* must be made within 30 days after the filing of the notice of removal . . . .'"  *See Levin v. Tiber Holding Co.*, No. 98 Civ. 8643, 1999 WL 649002, at *3 (S.D.N.Y. Aug. 25, 1999).  On October 1, 1996, Congress amended section 1447(c) to its current language.  *Id.*

[10] Twin City cites to a number of cases in support of the claim that the thirty-day time limit is strictly enforced.  (Twin City Opp'n Mem. 25-26)  A number of these cases, however, do not appear to support the proposition for which they are cited.  For example, *Harris Corp. v. Kollsman, Inc.*, 97 F. Supp. 2d 1148 (M.D. Fla. 2000), pertains to objections to removal (and not remand) on timeliness grounds, and concludes that "certain conduct on the part of *plaintiffs* has been held to preclude them from *objecting to removal* on timeliness grounds [such as] 'waiver,' and . . . 'estoppel.'" *Id.* at 1151-52 (emphasis added).

comply with the Court's individual practices, which require a moving party to submit a pre-motion letter outlining the basis for the motion and requesting a pre-motion conference. (Individual Practices of Kenneth M. Karas ¶ 2A)  Approximately two weeks thereafter, Third-Party Plaintiffs submitted a letter request for a pre-motion conference consistent with the Court's individual practices.  The Court then held the pre-motion conference and set a briefing schedule. Third-Party Plaintiffs timely filed their motion papers, including their Memorandum of Law, which is identical to the Memorandum of Law originally submitted in support of their timely-made remand motion.

According to Twin City, this sequence of events makes the motion untimely. Specifically, Twin City argues that after the Court denied the motion without prejudice, "[Third-Party Plaintiffs] had one additional day to file their request for a pre-motion conference, thereby preventing the balance of their deadline from expiring.  However, [Third-Party Plaintiffs] waited two weeks before finally sending their request . . . ."  (Twin City Opp'n Mem. 26)  This argument is unpersuasive for several reasons.

First, Twin City's objection is based on an overly technical reading of the Court's individual practices and the applicable statute.  The Court's denial of the timely-filed motion was obviously not on the merits, but solely on the procedural default of Third-Party Plaintiffs to submit a pre-motion letter requesting a pre-motion conference.  Because the Memorandum of Law provided the type of analysis typically required in a pre-motion letter, the only thing lacking from Third-Party Plaintiffs' submission was a formal request for a conference.  Had such a conference been requested contemporaneously with the Memorandum of Law, the Court could have scheduled the conference and formally tolled the time by which Third-Party Plaintiffs

would have to file their motion.  Indeed, the Court has since uniformly employed this practice

when either a pre-motion letter is filed or a motion is filed in contravention of the Court's

individual practices precisely to avoid any confusion among the parties about the status of any

applicable deadlines, the timing of any response to the pre-motion letter, and the scheduling of

the pre-motion conference.  That the Court did not do so explicitly here is no basis to deem the

timely motion (timely, that is, under § 1447(c)) to be untimely simply by virtue of the Court's

individual practices.  *Cf. Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133

(2d Cir. 2006) ("We think the District Court's decision to remand for lack of an index of State

Court documents was an unduly rigid application of the local requirement. . . .  The Authority's

filing of all the State Court documents afforded the District Court ample opportunity to assess

whether the case should remain in a federal court.  If an index was thought to be needed, the

District Court could have ordered the Authority to furnish one promptly.  A remand, with the

consequent deprivation of a federal forum, for lack of an index was too drastic a remedy for such

a minor noncompliance.").  Put another way, the Court could have waived its own individual

practices and allowed the motion to be filed.  Deeming the motion to be timely now, in the

context of Twin City's objection, would accomplish the same thing and, in the Court's view, be a

just application of its own practices and Section 1447(c).  *See Somlyo,* 932 F.2d at 1049 ("The

district court should ask whether the application of the letter of Local Rules to a particular case

would cause an unjust result.  If faced with potential unfairness, the district court should tailor

the Local Rules to best achieve a just outcome.").

      While there appears to be no authority specifically addressing the unique facts of this

case, the available case law supports the view that the timely filing of the motion to remand does

not become untimely because of "quirks" in the local rules. For example, in *Phoenix Global Ventures*, the movant's remand motion was twice rejected as a result of the district court's electronic case file system, thus making the perfected motion technically untimely. 422 F.3d at 74. Nevertheless, in affirming the district court's acceptance of the remand motion, the Second Circuit held that district courts may "excuse failures to comply with rules enforced by its local electronic case filing system for purposes of determining when a motion was made." *Id.* at 76.

In another case, *Blanco v. Snyder's of Hanover, Inc.*, No. 03 Civ. 385, 2003 WL 21939707 (S.D.N.Y. Aug. 12, 2003), movants filed an "Affirmation in Opposition" to the removal of a case initially and improperly sent to the Eastern District of New York. *Id.* at *1. The "Affirmation" pointed out the alleged untimeliness of the removal, but it was never filed as a motion to remand and was never addressed in the Eastern District of New York. *Id.* Instead, the case was transferred to the Southern District of New York, which after limited discovery and the filing of motions to dismiss, learned of the earlier objection to removal. *Id.* at *3. The court remanded the case in spite of the claim by defendant that the "formal" motion was untimely. *Id.* Noting that the timeliness objection was "overly technical on the unusual facts of this case," the court further noted that plaintiffs had "made known their opposition to removal, and their concededly meritorious grounds for remand, within the time limit set by § 1447(c), in the 'Affirmation of Opposition.'" *Id.*

This application of the law is consistent with the rationale behind the thirty-day requirement for remand motions, which is intended to "prevent the delay, inefficiency, and unfairness resulting from late-stage, forum-shopping remand motions." *Pierpoint v. Barnes*, 94 F.3d 813, 817 (2d Cir. 1996). Moreover, this is not a case where a party is seeking to amend the

motion to remand, in which case, as Twin City notes, courts have found that "the amended motion cannot relate back to the original motion to remand for purpose of complying with the time requirement." *Locke v. Purdon*, No. 294CV70-BO, 1995 WL 1945502, at *2 (N.D. Miss. Apr. 20, 1995).

A second reason to reject Twin City's claim is that even if the motion is not fairly deemed to have been timely made, there is authority for deeming it to have been equitably tolled. *See Chamberlain v. AMREP, Inc.*, No. 3:04-CV-1776-B, 2004 WL 2624676, at *2 (N.D. Tex. Nov. 18, 2004) (holding removal deadlines subject to equitable exceptions); *Phoenix Global Ventures v. Phoenix Hotel Assocs., Ltd.*, No. 04 Civ. 4991, 2004 WL 2360033, at *5 (S.D.N.Y. Oct. 19, 2004) (concluding that equitable tolling is appropriate where motion to remand was arguably untimely because of difficulties encountered in using ECF system), *aff'd*, 422 F.3d 72 (2d Cir. 2005); *Byfield v. Niaz,* No. 00 Civ. 6572, 2001 WL 25705, at *2 (S.D.N.Y. Jan. 10, 2001) ("In these circumstances, it is appropriate that the statutory time period for filing a remand motion be equitably tolled for a minimum of three weeks."); *Doyle v. Staples*, No. 99-CV-6062, 2000 WL 194685, at *2 (E.D.N.Y. Feb. 18, 2000) ("I conclude that the thirty-day deadline in § 1447(c) was equitably tolled in this case and that I therefore have the authority to entertain an otherwise untimely motion to remand.").

In this case, the Third-Party Plaintiffs provided unambiguous and timely notice to Twin City of their intention to send this case back to state court, and the rationale in support of this intended course of action. The subsequent delay in scheduling the pre-motion conference was neither lengthy nor done for tactical gain. Indeed, it may very well be the case that Third-Party Plaintiffs believed the Court would schedule the pre-motion conference without any formal

request.  Thus, under these circumstances it is proper to view the thirty-day deadline to be equitably tolled simply as a means to permit Third-Party Plaintiffs to perfect their motion. Moreover, it cannot credibly be claimed that the Court's application of its individual practices harmed Twin City.  Indeed, it merely gave Twin City more time to respond to the motion.  As such, Twin City has not identified any prejudice from the timing of the motion and, therefore, the Court is not persuaded that the motion should be denied as untimely.  *See Phoenix Global Ventures*, 422 F.3d at 76 ("Associates have never identified any prejudice arising from the one-day delay in their receipt of the remand motion.  The district court was well within its discretion to determine that holding Ventures to the technical ECF system requirements would have worked an injustice."); *Wilson v. Lowe's Home Ctr., Inc.*, 401 F. Supp. 2d 186, 189 (D. Conn. 2005) ("[P]laintiff's motion to remand may be treated as though it had been filed within the 30-day period.  Treating the motion this way causes no unfair prejudice to the defendant.") (citations omitted).[11]

### 3.  Third-Party Defendant Removal Under Section 1441(a)

Section 1441(a) provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant* or *the defendants*, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a) (emphasis added)  The initial question that jumps out from this provision is whether Twin City, as a named Third-Party

---

[11]Even if Third-Party Plaintiffs' objection based on § 1441(a) were deemed to be untimely, their claim that the Court lacks jurisdiction, discussed *infra*, cannot be dismissed on timeliness grounds, as jurisdictional defects from a removal may be raised at any time.  *See* 28 U.S.C. § 1447(c).

Defendant, is a "defendant" that may remove under § 1441(a). Third-Party Plaintiffs say no; Twin City says yes.

There is little doubt that measured by the quantum of decisions, the weight of authority decidedly tips in favor of Third-Party Plaintiffs. *See, e.g.*, *ConocoPhillips Co. v. Turner Indus. Group, LLC*, No. Civ. G-05-516, 2006 WL 213956, at *1 (S.D. Tex. Jan. 24, 2006) ("[T]he majority of courts have held that third-party defendants are not 'defendants' as the term is used in § 1441(a) and cannot remove an action from state court."); *Casul v. Modell's N.Y. II, Inc.*, No. 04 Civ. 7204, 2004 WL 2202581, at *2 (S.D.N.Y. Sept. 30, 2004) ("[C]ourts have routinely held that a third-party defendant may not remove under section 1441(a)."); *Sterling Homes v. Swope*, 816 F. Supp. 319, 321 (M.D. Pa. 1993) ("The majority view among courts is that third party defendants may not remove a case. This view is shared by the leading commentators.") (collecting cases); *Knight v. Hellenic Lines, Ltd.*, 543 F. Supp. 915, 917 (E.D.N.Y. 1982) ("[J]udicial authority and the commentators have squarely rejected the view that a defendant in a third-party action is a 'defendant' under § 1441(a).").

Of course, where there is a majority view, there is a minority view as well. "The courts in the minority, permitting third-party removal, have done so in varying degrees. . . . However, most courts permitting third party removal have done so only of the severed part" of a case, typically under Section 1441(c). *See Sterling Homes*, 816 F. Supp. at 321. Section 1441(c) permits removal for a "separate and independent claim" to which there is a federal question under Section 1331 that is joined with a claim for which there is no basis for removal.[12] Since

_____

[12]Until it was amended in 1990, Section 1441(c) permitted removal based on diversity jurisdiction. Accordingly, a number of cases interpreting the pre-amendment statute note, in the context of third-party claims, that Section 1441(c) is an "alternate basis for removal" of diversity

Twin City did not remove this case pursuant to § 1441(c), the case law interpreting this provision has little significance.

The judicial debate over the question of third-party removal has raged for years, so there is little left to be added to the discussion. After a comprehensive review of the case law (which does not yet include a decision from the Second Circuit), the Court is persuaded that the majority view is the superior one. To begin, the majority view is more faithful to the Supreme Court's instruction in *Shamrock Oil* to strictly construe the removal statute, *see* 313 U.S. at 108-09, as

claims. *Elsis v. Hertz Corp.*, 581 F. Supp. 604, 607 (S.D.N.Y. 1984). However, since the amendment, cases addressing the issue of whether a third-party defendant has a right to remove acknowledge the lack of direction given to district courts. *See Gen. Motors Acceptance Corp. v. Maier-Schule GMC., Inc.*, Nos. Civ-90-1021E, Civ-90-1022E, 1991 WL 37817, at *1 (W.D.N.Y. Mar. 11, 1991) ("No guidance as to a third-party defendant's right to removal has been received from Congress, the United States Supreme Court or the United States Court of Appeals for the Second Circuit."); *Crawford v. Hosp. of Albert Einstein Coll. of Med.*, 647 F. Supp. 843, 845 (S.D.N.Y. 1986) ("Whether third-party or cross-claim defendants may ever remove a claim under § 1441(c) is a question that neither Congress nor the Supreme Court has yet answered.").

Even these cases, however, generally found that there was no right to removal by a third-party defendant under §1441(c). *See Casul*, 2004 WL 2202581, at *2 ("[M]ost courts, including the Seventh and Eighth Circuits, simply do not read section 1441(c) as permitting removal by a third party defendant.") (citing cases); *see also Crawford*, 647 F. Supp. at 846 ("Courts in the Southern District consistently adhere to the majority position that third-party defendants have no right to remove claims under § 1441(c), even if they are separate and independent."); *Knight*, 543 F. Supp. at 917 ("Most courts have held that [§] 1441(c) applies only when the removable and non-removable claims are joined in the plaintiffs's complaint, and thus affords no right of removal to a third-party defendant."); *Luebee v. Presbyterian Hosp. of New York*, 526 F. Supp. 1162, 1164 (S.D.N.Y. 1981) ("As to the scope of [§] 1441(c), the better reasoned position is one which limits removal to claims brought by the original plaintiff."). These Courts reason that "'[t]he joinder of claims to which § 1441(c) refers is solely the joinder in the complaint by the *plaintiff*. The principle is that if a plaintiff has not joined a "separate and independent claim" *by him* which is removable, then no defendant in any cross-claim thereafter filed has any right of removal.'" *Crawford*, 647 F. Supp. at 846 (quoting *Verschell v. Fireman's Fund Ins. Co.*, 257 F. Supp. 153, 154 (S.D.N.Y. 1966)). Not only have courts within this district uniformly upheld this rule, *see Crawford*, 647 F. Supp. at 846 ("Cases in this district since *Verschell* uniformly prohibit removal by third-party defendants."), but "[o]ther District Courts in the Second Circuit prohibit third party defendants from removing." *Id.*

26

well as the plain language of the statute. "Although *Shamrock Oil* is not dispositive of the precise issue . . . , it does dictate that the phrase 'the defendant or the defendants,' as used in § 1441(a), be interpreted narrowly, to refer to defendants in the traditional sense of parties against whom the plaintiff asserts claims." *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 462-63 (6th Cir. 2002). "This interpretation of 'the defendant or the defendants' is bolstered by the use of more expansive terms in other removal statutes. Title 28 grants removal power in bankruptcy cases to any 'party,' *see* 28 U.S.C. § 1452(a), a broader grant of power that courts have interpreted to extend to third-party defendants." *Id.* at 463. "By contrast, § 1441(a)'s grant of removal power is much more limited, instilling a right of removal only in the defendant or the defendants." *Id.*; *see also Casul*, 2004 WL 2202581, at *2 ("The plain text of the statute does not permit removal by a person other than a defendant . . . ."); *Johnston*, 134 F. Supp. 2d at 880 (noting that the terms "defendant" and "third-party defendant" "typically are understood as referring to distinct parties"); *Crawford*, 647 F. Supp. at 846 ("This court is not inclined to contravene every decided case of the district courts of this circuit and allow a fourth-party defendant to remove under § 1441(c). To do so would require an expansion of the statutory language beyond that expressed by Congress. This brand of statutory interpretation is misplaced, especially in the context of the removal statute."); *Knight*, 543 F. Supp. at 917 (concluding that a third-party defendant is not a "defendant" as that term is used in § 1441(a)).

The statute's plain language limiting the removal right to a defendant also reflects a conscious decision by Congress to restrict, over time, the removal options of parties in state cases. In the first Judiciary Act of 1789, Congress initially granted the removal right to "the defendant." *See Shamrock Oil*, 313 U.S. at 105. The Supreme Court interpreted this provision to

27

bar a non-citizen plaintiff who had been subject to a counterclaim from removing the case to

federal court. *See West v. Aurora City*, 73 U.S. 139, 141 (1867). In the Judiciary Act of 1875,

however, "the practice of removal was greatly liberalized," by permitting removal by "either

party, or any one or more of the plaintiffs or defendants" to remove. *Shamrock Oil*, 313 U.S. at

106. This provision remained in effect until 1887, when Congress adopted the language

currently in place. *See Id.*; *Greater N.Y. Mut. Ins. Co. v. Anchor Constr. Co.*, 326 F. Supp. 245,

247 (S.D.N.Y. 1971) ("In 1875 the right to removal, at least in Federal question cases, was

granted to either party. However, the Judiciary Act of 1887-1888, restricted this broad rule to

allow removal only by a defendant or defendants.") (quotations omitted). The full-circle

evolution of the removal statute, then, particularly when combined with the Supreme Court's

interpretation of this statutory evolution, strongly supports the notion that Congress intended to

limit removal only to defendants and not to any other party, including third-party defendants. *See*

*Shamrock Oil*, 313 U.S. at 108 ("Not only does the language of the Act of 1887 evidence the

Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy

of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for

the strict construction of such legislation."); *Sterling Homes*, 816 F. Supp. at 323 (alterations to

removal statute "served to limit removal and bolster the restrictive interpretation given to §

1441(c), an interpretation disfavoring third party removal"); *Share v. Sears, Roebuck & Co.*, 550

F. Supp. 1107, 1108 (E.D. Pa. 1982) ("The proposition that 'defendant' in section 1441(a)

excludes third-party defendants is not compelled by syntax. Congress certainly could have

conferred, and intended to confer, the privilege of remand on any litigant who at some stage of a

state court law suit becomes the target of a claim cognizable by a federal district court. But

28

Congress has not followed this course.").

A strict construction of the removal statute also serves the practical purpose of limiting a third-party from undermining the forum choices of both the plaintiff and defendant in a state action. *See Johnston*, 134 F. Supp. 2d at 880 ("[R]emoval by the principal defendant displaces the chosen forum of only one party, the principal plaintiff, while removal by a third-party defendant threatens to overcome the state-court preferences of both the principal plaintiff *and* the principal defendant."); *Chase*, 523 F. Supp. at 382 ("[A]llowing removal by the third-party defendant in this case denies both the plaintiff and the defendant the right to proceed in a forum of their own choosing."). Of course, this applies *perforce* here, as removal would frustrate the forum choices of several parties. *Cf. Crawford*, 647 F. Supp. at 846 ("These arguments apply with equal if not greater force to fourth-party defendants, since they too are introduced to the litigation after its commencement, are not named in the plaintiff's complaint, and are only one small corner of a larger universe of dispute.").

Finally, strictly interpreting the removal statute to limit removal rights to defendants optimally harmonizes federalism interests. As the Seventh Circuit observed: "To allow removal of an entire suit on the basis of a third-party claim is to bring into federal court an action the main part of which is not within that court's original jurisdiction, and is thus to enlarge federal at the expense of state jurisdiction in rather a dramatic way." *Thomas v. Shelton*, 740 F.2d 478, 486 (7th Cir. 1984). In this case, the normal federalism concerns are magnified by virtue of the relationship between the Interpleader Action and the Rescission Action, both of which are assigned to the same New York State Supreme Court Justice. In the Rescission Action, Federal has sought, and continues to seek, declaratory judgment that it may rescind the Federal Policy,

29

thus relieving Federal of providing insurance coverage to several of the Third-Party Plaintiffs.

Only when Federal partially lost the first round of summary judgment litigation did it bring the

Interpleader Action, as an obvious effort to hedge its position as to the other insured parties under

the Federal Policy. However, in bringing the Interpleader Action, Federal in no way conceded

that, for example, Kozlowski is entitled to insurance benefits. Indeed, subsequent to

Kozlowski's conviction, Federal is currently engaging Kozlowski in a second round of litigation

over this question, the result of which may have a profound impact on the Interpleader Action.[13]

Thus, the usual instruction to narrowly construe the statutory right to remove applies with special

emphasis here. *Cf. Casul*, 2004 WL 2202581, at *2 (limiting right of removal to defendants only

avoids "judicial gloss" that can "serve as an unwarranted encroachment on state sovereignty").

In the midst of this vast sea of authority strongly suggesting that third-party defendants

have no statutory right to remove cases, Twin City hitches its life raft to *Mignogna v. Sair

Aviation, Inc.*, 679 F. Supp. 184 (N.D.N.Y. 1988), claiming that the reasoning in that case "is

more persuasive and ought to be followed by this Court." (Twin City Opp'n Mem. 28). Before

turning to the court's reasoning, however, it bears noting that the remand motion in *Mignogna*

was *granted* on the ground that removal of the case did not involve a "separate and independent

claim" under § 1441(c). *Id.* at 190-91. Thus, the court's discussion of the right of a third-party

defendant to remove an action is *dicta*. Moreover, the discussion of a third-party defendant's

---

[13]Of course, the Court recognizes that Twin City believes that whatever interplay there may be between the Rescission and Interpleader Actions is of no import to the questions of, first, what relationship, if any, exists between the Interpleader Action and the Third Party Complaints brought against Twin City and, second, whether the claims against the Interpleader Defendants/Third Party Plaintiffs should be joined with the third party claims against Twin City. This issue will be discussed below.

right to remove in that case is in the context of § 1441(c), which as noted above, has since been amended and no longer allows for removal where the sole basis of federal jurisdiction (as here) is diversity.

In any event, the Court is not persuaded by the rationale offered in favor of third-party defendant removal of cases. In support of its expansive reading of the removal statute, the *Mignogna* court suggests that the definition of "defendant," which unquestionably is determined by federal law, should be construed to mean "someone who 'has been haled into court involuntarily and must defend an action for relief against it.'" *Id.* at 189 (quoting *Ford Motor Credit Co. v. Aaron-Lincoln Mercury, Inc.*, 563 F. Supp. 1108, 1113 (N.D. Ill. 1983)). Ignoring the statute's historical evolution, and the obvious difference between a defendant and third-party defendant, as well as the Supreme Court's admonition to strictly construe the removal statute, the *Mignogna* court found "nothing in the legislative history of the general removal statute requiring an interpretation of statutory language that is inconsistent with ordinary usage." *Id.* Respectfully, this Court believes the more limited definition of "defendant," absent a congressional directive to the contrary, is more persuasive and prudent. *See CapitalSource Finance, LLC v. THI of Columbus, Inc.*, No. 2:05-CV-0561, 2005 WL 3216570, at *3 (S.D. Ohio Nov. 29, 2005) ("Although the Court recognizes that the removing parties, unlike the typical plaintiff/counterclaim defendant, did not choose in the first instance to litigate their claims in the state court, the presumption against removal jurisdiction and the need to construe the removal statute narrowly and not liberally precludes a finding that they are 'defendants' with a right to remove."); *Kaye Assocs. v. Bd. of Chosen Freeholders*, 757 F. Supp. 486, 489 (D.N.J. 1991) ("Our position that third-party defendants cannot remove cases to federal court is consistent with

the Supreme Court's assertion in *Shamrock Oil* that the removal statute should be uniform in its application, because our position uniformly limits removal to claims joined by plaintiffs.").

From a policy perspective, the *Mignogna* court also suggests that to "adopt an inflexible rule barring removal by third-party defendants . . . would have the curious effect of making a litigant's right to have a claim heard in a federal forum turn on the fortuity of being sued in a third-party complaint rather than in a separate action." *Mignogna*, 679 F. Supp. at 188. Relatedly, the court notes, "the right to remove would be directly affected by the procedural rules governing third-party practice, which may vary from state to state." *Id.*

This objection to strictly interpreting the removal statute to bar third-party removal stands the uniformity argument on its head. Indeed, "[a] uniformly applied federal rule barring removal by third-party defendants does not allow state procedure to control access to federal courts." *Chase*, 523 F. Supp. at 381 n.1. For example, where a state's joinder rules are unusually permissive, or more to the point, more permissive than, for example, Fed. R. Civ. P. 14 or 20, permitting removal in those circumstances "would allow [the third-party defendant] to remove into federal court an action that could not have been brought there originally." *Id.* In other words, permitting removal by a third-party defendant properly joined under state law "allows peculiarities of state practice to define the jurisdiction of a federal court." *Id.*

"Admittedly, the national disuniformity resulting from permitting removal only by defendants joined in the plaintiff's complaint provides some tension." *Crawford*, 647 F. Supp. at 846. However, "[t]his court is inclined not to increase federal jurisdiction despite the tension caused by non-uniform state pleading practices[,] [as] Congress is best suited to balance the interests and establish the parameters of federal court jurisdiction which serve those interests."

*Elkhart Coop. Equity Exch.*, 716 F. Supp. at 1388; *see also Kaye Assocs.*, 757 F. Supp. at 489

("While we think it better if third-party defendants were allowed to remove cases to federal court,

we are not the ones to make that choice; we are bound to enforce the will of Congress. In this

case, in the absence of a clearer expression of an intention to do so, we do not think that

Congress intended to give rights of removal to third-party defendants."); *Crawford*, 647 F. Supp.

at 846 (noting that tolerating the tension created by varying state third-party practice "is

preferable to shattering the coherence of cases and expanding the jurisdiction of this court

beyond that expressed by Congress."). For these and other reasons, therefore, the Court believes

that the better view is that the right to removal has not been given to third-party defendants in §

1441.

### 4. Fraudulent Joinder/Misjoinder

Twin City argues that even if third-party defendants have no statutory removal rights, it is

"entitled to remove the Third-Party Actions under the fraudulent joinder doctrine because it was

improperly joined as a party by [the Third-Party Plaintiffs] to defeat jurisdiction." (Twin City

Opp'n Mem. 26-27) Pivoting from there, Twin City claims that once the fraudulent joinder is

recognized, the parties may be realigned, thus converting Twin City into a "simple defendant"

whose citizenship is diverse from the true plaintiffs. (Twin City Opp'n Mem. 27) According to

Twin City, the end result of this jurisdictional re-construction is a removable action over which

this Court has jurisdiction. While not irrational, Twin City's argument suffers from several fatal

flaws, some at the removal stage and others at the jurisdictional stage. Either way, the result is

the same: granting Third-Party Plaintiffs' remand.

Beginning with the removal component, Twin City argues that under the so-called

"fraudulent joinder" doctrine, "'courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court.'" (Twin City Opp'n Mem. 27) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 1704 (2005)). Thus, the argument continues, "if this Court agrees that no third-party claim lies under Fed. R. Civ. P. 14, it follows that the Court must 'overlook the presence' of Twin City when conducting its removal analysis." (Twin City Opp'n Mem. 27)

This argument, however, is misdirected, as the essence of Twin City's objection is more akin to fraudulent "misjoinder," than fraudulent joinder. "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Elec. Coop, Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) (omitting quotations). As Twin City correctly notes, the Second Circuit has held:

> In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998); *see also Briarpatch Ltd.*, 373 F.3d at 302; *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).

Since Twin City acknowledges that it does not believe that Third-Party Plaintiffs committed "outright fraud," by joining Twin City as a third-party defendant, the question is whether Third-Party Plaintiffs can state a cause of action against Twin City, a test, Twin City

notes, that is "akin to the review of a Rule 12 motion to dismiss."[14]  (Twin City Opp'n Mem. at 11)

While Twin City asserts that federal law controls the question of whether there has been fraudulent joinder, "'[j]oinder will be considered fraudulent when it is established 'that there can be no recovery [against the defendant] under the law of the state on the cause alleged.'" *Whitaker*, 261 F.3d at 207 (quoting *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984) (citations omitted).  In fact, in *In re Rezulin Products*, a decision cited by Twin City, Judge Kaplan explained that "the Court must consider the state law upon which the claim rests and then determine only whether there is a reasonable possibility that the relevant state's highest court would rule in favor of the plaintiff were the issue presented to it." *In re Rezulin Prods.*, 133 F. Supp. 2d at 280.  Thus, as Third-Party Plaintiffs point out, "[t]he test of whether or not here has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law."  (Third-Party Plaintiffs Reply Mem. 6) (citing *Stan Winston Creatures*, 314 F. Supp. 2d at 182)  That is, "[e]ven though federal law applies to the question of fraudulent joinder, the ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved."  16 James Wm. Moore, et al., *Moore's Federal Practice* § 107.14 [2][c][iv][C] (3d ed. 2003).

The wrong turn in Twin City's argument, however, is not a failure to accurately state the

---

[14]As Twin City points out, "fraudulent joinder" is a "term of art."  *See Sanchez v. Univ. of Pa. Museum of Archaeology & Anthropology*, No. 04 Civ. 1253, 2004 WL 1621184, at *1 (S.D.N.Y. July 20, 2004); *see also New York State Ins. Fund v. U.S. Liab. Ins. Co.*, No. 03 Civ. 6652, 2004 WL 385033, at *2 (S.D.N.Y. March 2, 2004) (explaining that "'motive in fact usually has nothing to do'" with the doctrine of fraudulent joinder) (quoting *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 279-80 (footnotes omitted)).

law regarding fraudulent joinder. Rather, it is their belief that fraudulent joinder is the doctrine

that applies here. Indeed, nothing in Twin City's extensive briefing suggests that the relief that

Third-Party Plaintiffs seek against Twin City – a declaratory judgment that Twin City is

obligated to pay defense costs of Third-Party Plaintiffs – is impossible to obtain under New York

state law. Instead, Twin City argues that the defect in the Third-Party Complaint is that the

claims against Twin City were improperly (i.e., fraudulently) joined with claims made in the

Interpleader Complaint, under both Fed. R. Civ. P. 14(a) and its New York state equivalent, N.Y.

C.P.L.R. § 1007. As alleged, therefore, the claim is closer to one of "fraudulent misjoinder."

     "Fraudulent misjoinder" occurs when a plaintiff purposefully attempts "to defeat removal

by joining together claims against two or more defendants where the presence of one would

defeat removal and where in reality there is no sufficient factual nexus among the claims to

satisfy the permissive joinder standard." *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956,

971 (S.D. Ind. 1999) (citing 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,

*Federal Practice & Procedure* § 3723, at 656-57 (3d Ed.)) [hereinafter "Wright, Miller &

Cooper"].[15] The theory of fraudulent misjoinder was first articulated by the Eleventh Circuit in

*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other

grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000). In *Tapscott*, two

separate groups of plaintiffs attempted to join two separate groups of defendants. Though

conceding that the claims against the defendants were improperly joined under Fed. R. Civ. P.

20, plaintiffs argued that "a misjoinder, no matter how egregious, is not fraudulent joinder." *Id.*

---

     [15]Though the fraudulent misjoinder doctrine materialized in the context of traditional
joinder, the Court is aware of no principle or authority that would suggest it is inapplicable to
third-party joinder.

This was proper, plaintiffs argued, because there was a possibility of a claim under state law against each of the misjoined defendants and, therefore, there was no "fraudulent joinder" as that phrase had been defined. *Id.* Rejecting this claim, the Eleventh Circuit noted that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* Thus, if plaintiffs had colorable claims against defendants under state law, the *Tapscott* court held that the misjoinder of such claims in one lawsuit that fraudulently defeats diversity cannot always be used to deny a defendant's right of removal. *Id.* However, in affirming the district court's remand order, the Court made clear that it was not holding that "mere misjoinder is fraudulent joinder," but only that plaintiffs' "attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

Thus, under *Tapscott*, "procedural misjoinder may represent a third type of fraudulent joinder." 14B Wright, Miller & Cooper § 3723, at 658; *see also In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147 (S.D.N.Y. 2001) (describing *Tapscott* misjoinder as "a third species of fraudulent joinder"). However, in its wake, *Tapscott* left unanswered two questions critical to the application of the fraudulent misjoinder doctrine: (I) what constitutes "egregious" misjoinder, and (ii) does federal or state law govern the question of proper joinder? *See, e.g.*, *Jones v. Nastech Pharm.*, 319 F. Supp. 2d 720, 725 (S.D. Miss. 2004) ("The courts that have analyzed *Tapscott* are split on the issue of whether federal or state rules of joinder should apply.").

Predictably, the courts have wrestled with the first question – the definition of an "egregious misjoinder" of claim. Indeed, it is this component of *Tapscott* that has been the focus of the critical commentary. *See Bowling v. Kerry, Inc.*, 406 F. Supp. 2d 1057, 1061 (E.D. Mo.

2005) ("Several courts and commentators have noted that the theory of procedural misjoinder articulated in the *Tapscott* decision is inherently ambiguous."); *Jamison v. The Purdue Phama Co.*, 251 F. Supp. 2d 1315, 1319 (S.D. Miss. 2003) ("While *Tapscott*'s result was certainly correct, the fraudulent misjoinder doctrine it authored has not met with resounding approval. Commentators have suggested that the doctrine adds further complexity to the federal courts' decision making regarding removal jurisdiction, as well as additional litigation."); 14B Wright, Miller & Cooper § 3723, at 657-58 ("The court's language [regarding egregious misjoinder] injects a considerable degree of ambiguity into the holding by intimating that there is some threshold above simple misjoinder that needs to be passed to create the new form of fraudulent joinder it was recognizing in the *Tapscott* decision.").

One possible means of clarifying the standard is to look at fraudulent misjoinder the same way that courts in this circuit analyze fraudulent joinder – can the defendant show either: (I) that there was there outright fraud, or (ii) that there is no possibility, based on the pleadings, that a plaintiff properly can join the claims brought against the third-party defendant. *See Conk*, 77 F. Supp. 2d at 971 ("To address whether Conk has any claims against Leonard that are related to claims against the other defendants, the court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against Leonard were properly joined with his claims against the other defendants?"). For purposes of this motion, however, the Court will assume, but does not decide, that the "egregious misjoinder" standard does not apply. Applying this standard, which does no harm to Twin City as compared to the "egregious misjoinder" standard, the Court finds, for reasons discussed below, that there has been no fraudulent misjoinder.

The question of whether to apply state or federal law, however, does need to be resolved, because there can be little question that if this action were initially brought in federal court, Third-Party Plaintiffs would be hard pressed to justify the joinder of the third-party claims under Fed. R. Civ. P. 14(a). Rule 14(a) provides, in pertinent part: "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Under this rule, "[i]t is clear that a claim may not be brought against a third-party defendant unless it is based on the plaintiff's claim against the defendant." *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 281 (S.D.N.Y. 2003); *see also Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) ("'The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. In other words, the outcome of the third-party claim must be contingent on the outcome of the main claim . . . .'") (quoting 6 Wright, Miller & Cooper § 1446 at 377 (quoting *Nat'l Bank of Canada v. Artex Indus. Inc.*, 627 F. Supp. 610, 613 (S.D.N.Y. 1986)). Furthermore, "[a] third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim." *Res. Funding Corp. v. Congrecare, Inc.*, No. 91 Civ. 8163, 1994 WL 24825, at *10; *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) ("[I]nterpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'").

Under this analysis, there is a strong argument that Twin City is not a proper third party under Rule 14(a). As Twin City argues, "[h]ere, neither the Belnick Third-Party Action nor the

Kozlowski Third-Party Action involves the funds of the underlying action, namely, the $25 million in coverage provided by the Federal Policy.  Rather, the Third Party Actions only concern the *next* layer of coverage provided by Twin City.  The interpleader claim brought by Federal is strictly limited to the proceeds of its own policy."  (Twin City Opp'n Mem. 12)  While it may be true that both the Interpleader and Third-Party Complaints involve insurance coverage, and that there may be some overlap in the coverage issues (because of the follow-form provision), the Third-Party Complaints pertain to a different policy, raising potentially some distinct claims regarding coverage, including the endorsements Twin City adopted subsequent to the Federal Policy being issued.  *See Siebels, Bruce & Co. v. Nicke*, No. 2:95 CCV 00723, 1997 U.S. Dist. LEXIS 12772 (M.D.N.C. July 18, 1997) (holding that in an interpleader action involving distribution of insurance proceeds from a bus accident, defendants/third-party plaintiffs/claimants could not bring a third-party complaint against the bus company).  Moreover, it does not appear that Twin City "may be liable to the third-party plaintiff[s] for all or part of [Federal's] claim against the third-party plaintiffs."  *See* Fed. R. Civ. P. 14(a).  Thus, joinder of Twin City under Rule 14(a) would be doubtful at best.

It is perhaps in recognition of this that Twin City asserts that "'[t]he question whether a non-diverse party has been joined improperly is one of federal law.'" *New York State Ins. Fund*, 2004 WL 385033, at *2 (quoting *In re Rezulin Prods. Liab. Litig*., 133 F. Supp. 2d at 280). However, this only means that federal law governs the question of a how a court should determine whether joinder is fraudulent, but not that federal law determines whether there has been fraudulent joinder.  Indeed, as noted previously, the courts are clear that in deciding if there has been a fraudulent joinder of a non-diverse defendant, state law determines whether a plaintiff

could possibly substantiate a cause of action and thus, properly sue a non-diverse defendant. *See Pampillonia*, 138 F.3d at 461 (noting that the party seeking to establish fraudulent joinder bears the "heavy burden" of proving by "clear and convincing evidence" that there is "no possibility . . . that a plaintiff can state a cause of action against the non-diverse defendant in state court").

The majority of cases applying the fraudulent misjoinder doctrine also have held that state law on joinder governs. *See Asher v. Minn. Mining and Mfg. Co.*, No. Civ. A 04 CV 522, 2005 WL 1593941, at *6 (E.D. Ky. June 30, 2005) ("It appears that the majority of courts that have adopted the fraudulent misjoinder doctrine have determined that the issue of whether claims have been misjoined should be evaluated under state procedural law rather than federal law."). In contrast, most cases that have applied the federal rules regarding joinder merely have assumed their applicability without squarely addressing the propriety of using federal instead of state rules governing joinder. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d at 144; *In re Diet Drugs*, No. Civ. A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999); *Rudder v. KMart Corp.*, No. Civ. A. 97-0272, 1997 WL 907916, at *5-6 (N.D. Ala. Oct. 15, 1997); *Koch v. PLM Int'l, Inc.*, No. Civ. A. 97-0177, 1997 WL 907917, at *3 (N.D. Ala. Sept. 24, 1997).

The Court is persuaded that it is more appropriate to apply state law in evaluating the pre-removal joinder of claims and/or parties. Initially, this appears to be the most rational way to view the propriety of any joinder since the question is one of joinder in the state action before it was removed. "[S]everance of claims only when those claims were improperly joined under state law at the action's inception . . . shares the same conceptual rationale underlying the doctrine of fraudulent joinder. In both instances, the court, in examining its own jurisdiction, attempts to identify an infirmity in the plaintiff's complaint, *under the law of the state in which it*

*was originally brought*." *Jamison*, 251 F. Supp. 2d at 1321 n.6. *See also HVAC Sales, Inc. v. Zurich Am. Ins. Group*, No. C-04-03615, 2005 WL 2216950, at *6 n.13 (N.D. Cal. July 25, 2005) ("The court agrees . . . that state procedural law should apply, as the question is whether AMCO and SAFECO were properly joined in the first place."); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1128 (N.D. Cal. 2004) ("Notwithstanding *Tapscott's* application of Federal Rule 20, most courts looking at this issue have applied the state rule. This seems the better choice since the question is whether the parties were misjoined in state court."); *In re Diet Drugs*, 294 F. Supp. 2d 667, 673-74 (E.D. Pa. 2003) ("Federal law does not govern whether a plaintiff has stated a viable claim against a non-diverse defendant for purposes of fraudulent joinder. Similarly, we do not see how federal joinder rules should apply when the issue is fraudulent misjoinder of non-diverse plaintiffs in a state court action so as to defeat our diversity jurisdiction."). "After all, when [Third-Party Plaintiffs] filed [their] complaint in the [New York Supreme Court], [they were] not required to comply with the Federal Rules of Civil Procedure in terms of joinder of parties or claims or any other aspect of the case." *Conk*, 77 F. Supp. at 971. Stated differently, it "makes little sense to say that the [party's] joinder became fraudulent *only after removal and only under the federal rule*." *Jamison*, 251 F. Supp. 2d at 1321 n.6.

Significantly, limiting the question to the propriety of joinder at the time the state complaint was filed is consistent with the "heightened sensitivity to federalism concerns" that permeates the law of removal. *Osborn*, 341 F. Supp. 2d at 1128; *see also Jamison*, 251 F. Supp. 2d at 1321 n.6 ("[U]nder both the traditional fraudulent joinder analysis and [the fraudulent misjoinder] approach, the district court simply looks to what the state court would do. Thus there is no use of Federal Rule 20 to create jurisdiction that did not previously exist. Rather, the

42

district court simply recognizes the contours of its own jurisdiction in relation to the action as it was originally brought."). If nothing else, this interpretation allows state courts to manage the cases initially brought in their jurisdiction. *See Jamison*, 251 F. Supp. 2d at 1321 n.6 (noting that by applying state joinder law, "there is neither danger of aggrandizement of federal jurisdiction nor an affront to the notion of federalism"). Also, permitting state courts to address any improper joinder in the state action relieves the removal/remand process of unnecessarily burdensome federal litigation. *See Osborn*, 341 F. Supp. 2d at 1127 ("[T]he last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require [defendant] to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court."); 14B Wright, Miller & Cooper § 3723 at 658 ("In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.").

It is also significant to note, however, that permitting state joinder issues to be ruled on by state courts, and in particular to allow state courts to sever improperly joined actions, still allows third-party defendants to remove improperly joined actions to the federal courts. *See Bowling*, 2005 WL 3448058, at *3 ("Requiring misjoinder to be addressed in state court does not impair the ability of a defendant to remove an action following the dismissal or severance of the improperly joined party."); 14B Wright, Miller & Cooper § 3723 at 658 ("[A] requirement that misjoinder be addressed in the state court would not impair the ability of an individual to remove an action following the elimination of the improperly joined party."). In fact, long before the fraudulent misjoinder doctrine came to be, some courts recognized that removal of a third-party

action that was severed *by the state court* was proper under § 1441(a).  *See Cent. of Ga. Ry. Co. v. Riegel Textile Corp.*, 426 F.2d 935, 938 (5th Cir. 1970) ("The severance order of the Alabama trial court [after initial remand by the federal court] was a determination that expediency and the interests of the parties were best served by treating the case as two lawsuits.  A federal court may respect that determination.").

Indeed, it was based on this authority that the Court recently invited the parties to address the question of whether the consensual remand of the underlying Interpleader Action, in effect, achieved the same thing as a state court severance of the lawsuit, thus permitting this Court to keep the Third-Party Actions.  While this option still appeals to the Court, if for no other reason that it seems realistically possible that the Third-Party Actions will be severed by the state court and thereafter return to this Court, the law requires the Court to consider the propriety of removal only at the time it was perfected.  *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.").  As such, this Court is barred from considering post-removal changes of the parties to the action.  *See Avis Rent-A-Car Sys., Inc. v. Zea*, No. Civ.A. G-05-469, 2005 WL 2850248, at *4 (S.D. Tex. Oct. 31, 2005) ("Avis is free to seek dismissal of its Interpleader and realignment of the parties in state court.  Should the state court grant such motions, and should Avis become the actual defendant in this lawsuit, and if the case falls within the boundaries of federal subject matter jurisdiction, it will have the power to remove this case to federal court.  However, at the present time it does not have such power under § 1441(a).").  Even a post-removal severance of the Interpleader Action with the consent of all the parties does not change the calculus.  *See Vasura*, 84 F. Supp. 2d at

538 ("[A] court cannot test the propriety of removal by ascertaining whether the statutory requirements are met prospectively; '[d]evelopments in the lawsuit . . . subsequent to removal can not serve to confer federal court jurisdiction if none in fact existed as of the time of removal.'") (quoting *Wamp v. Chattanooga Hous. Auth.*, 384 F. Supp. 251, 253 (E.D. Tenn. 1974)).

Finally, application of state joinder law is consistent both with the language of Section 1441 and the Federal Rules of Civil Procedure. Section 1441(a) specifically addresses removal of "any civil action brought in a state court," while Section 1441(b) allows for removal only "if none of the parties in interest properly joined and served as defendants is a citizen of the state in which" the action is brought. *Jones*, 319 F. Supp. 2d at 726. "Since the reference [in both provisions] is to a state court proceeding, joinder in that action could only be proper in accordance with the state rule of procedure on joinder . . . ." *Id.*

This conclusion lines up with other authority that stands for the proposition that the federal courts are to apply the state law regarding proper service in state actions *before they are removed*. For example, federal courts routinely look to state law when evaluating the propriety of service of process in deciding motions to dismiss a complaint in diversity cases removed to federal court. *See, e.g.*, *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003) ("Since [service] occurred prior to removal, we must determine whether it constituted sufficient service in accordance with the law of the jurisdiction in which the action was filed."); *Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue . . . ."); *Riley v. Georgia Pac. Corp.*, No. 1:05CV255, 2006 WL 37202, at *1 (N.D. Miss. Jan. 5, 2006) ("The sufficiency of service of

process prior to removal is strictly a state law issue.").

Moreover, federal courts look to state law to determine the propriety of service in the context of remand motions as well. For example, federal law requires that all defendants in an action must consent to removal of a case to federal court. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 03 Civ. 6220, 03-Civ. 6221, 03-Civ. 6223, 03 Civ. 6224, 2003 WL 22383090, at *1 (S.D.N.Y. Oct. 20, 2003) ("It is well established that the unanimous consent by defendants to a removal is necessary to remove an action under the general removal statute.") (citing *Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir. 1960)); *see also Chicago Rock Isl. & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900) (construing predecessor to § 1446 and noting that it required defendants to be unified in order to remove); *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 325 (E.D.N.Y. 1998) ("The rule of unanimity advances the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal and in favor of remand.") (quotations omitted). Where a non-consenting defendant is not properly served and/or joined, an exception to this requirement exists. *See White v. Bombadier Corp.*, 313 F. Supp. 2d 1295, 1298 (N.D. Fla. 2004). If the non-consenting defendant was not properly served, then that defendant is not deemed as being part of the action, and therefore, removal cannot be denied on the ground that there was less than full consent to removal among the named defendants. To determine whether a non-consenting defendant has been properly served, the courts look to state law. *Id.* at 1300 ("The sufficiency of service of process prior to removal is determined under the law of the state from whence the case was removed.").[16]

---

[16]There are some decisions stating rather broadly that the question of service in a removed action is a procedural one and therefore is to be governed by federal procedural law. For example, in *Stan Winston*, the court dealt with the question of service of a resident defendant,

The Court recognizes that there is a line of authority that suggests that federal law dictates whether the elements of removal jurisdiction have been satisfied. *See* 14B Wright, Miller & Cooper § 3721, at 299. This is so because the removal statute is "intended to be uniform in its application, [and] unaffected by local law definition or characterization of the subject matter to

who if, properly served, would defeat removal. *See* 28 U.S.C. § 1441(b) (barring properly served and joined resident defendant from removing an action). In determining that the resident defendant had been properly served, the Court noted that this was "a question of federal law," 314 F. Supp. 2d at 181, but it went on to hold that service had been sufficiently complete under New York law to be "proper" under § 1441(b). In reaching this conclusion, however, the Court also noted that the "technicalities of state law" were not dispositive in interpreting the federal removal statute, relying on a quote from Professors Wright, Miller, and Cooper that "state law generally is disregarded when questions relating to removal are considered." *Stan Winston*, 314 F. Supp. at 182 n.4 (quoting 14C Wright, Miller & Cooper § 3732, at 290)).

In making this statement regarding the general inapplicability of state law, Wright, Miller, and Cooper cited the Seventh Circuit's decision in *Roe v. O'Donohue*, 38 F.3d 298 (7th Cir. 1994), which held that the third-day clock for removal began when the defendant received the complaint, even if that defendant had not been properly served in the action under state law. *See* 14C Wright, Miller & Cooper § 3732, at 290. However, *O'Donohue* was abrogated by the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), which held that the commencement of the removal period began when formal service of process was made. *Id.* at 353-55. Thus, "[a]fter *Murphy Brothers*, proper service of process under state law is required to trigger a defendant's removal obligations." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 190, 195 (D. Mass. 2004); *see also Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001) ("[F]ederal courts may apply state procedural rules to pre-removal conduct."); *Frankston v. Denniston*, 376 F. Supp. 2d 35, 39 (D. Mass 2005) ("Because this case was originally filed in Massachusetts, Massachusetts law governs the issue regarding validity of service and process."); *T.E. Constr. Specialties, Inc. v. Vista Benefits, Inc.*, 2003 WL 22259075, at *3 (W.D. Tex. Sept. 23, 2003) ("The Court . . . concludes that proper service of process under state law is required to trigger a defendant's removal obligations."). Professors Wright, Miller, and Cooper thus changed their view: "[G]iven the Supreme Court's rejection of the Fifth and Seventh Circuits' rules regarding the triggering mechanism for the removal period, state law must now be followed for formal service of process to protect defendants' interests." 14C Wright, Miller & Cooper § 3732, at 290 (2003 Supplement). Therefore, while it may still be that technicalities in state service law will not affect a federal court's interpretation of the removal statute, *see Whittaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 204-05 (2d Cir. 2001), it appears the law requires a federal court to generally apply state procedural rules in determining whether a defendant has been properly served in a removed action.

47

which it is to be applied." *Shamrock Oil*, 313 U.S. at 104. This means that states "cannot by definition or characterization enlarge or narrow the categories of cases subject to removal." *Arthur v. E.I. DuPont de Nemours & Co., Inc.*, 58 F.3d 121, 125 (4th Cir. 1995). Thus, for example, a "state could not prevent removal of ordinary tort cases by calling its common law of torts a 'workmen's compensation law.'" *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 724 (7th Cir. 1994). Nor can a state's procedural laws determine the true plaintiff and defendant in a lawsuit. *See Chicago R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954). In other words, state procedural law cannot "control the privilege of removal granted by the federal statute." *Id.*

The notion that the removal statute is to be uniformly applied, however, does not mean that the federal courts are to apply only one set of rules regarding pre-removal joinder of parties or claims. Instead, uniformity in this limited context means uniformly applying the law of the forum state to address the question of proper joinder of parties and/or claims. Indeed, this principle lies at the heart of the debate over the removal rights of third-party defendants. The minority of courts that believe third-party defendants have removal rights contend that to limit removal only to the defendant or defendants named in the plaintiff's complaint would subject the removal statute to the vagaries of state third-party practice. *See, e.g.*, *Mignogna*, 679 F. Supp. at 188-89 (citing *Indus. Lithographic Co. v. Mendelsohn*, 119 F. Supp. 284, 286 (D.N.J. 1954)). Pursuing uniformity in this fashion, however, sacrifices the principle that the removal statute is to be narrowly construed to limit the exercise of federal jurisdiction at the expense of state jurisdiction. *Chase*, 523 F. Supp. at 381 n.1 (noting that permitting removal by third-party defendants would expand federal jurisdiction depending on the "liberality of third-party practice" in the various states). It also contravenes Fed. R. Civ. P. 82, which explicitly bars construction of

the federal rules "to extend or limit the jurisdiction of the United States district courts." *See also Jamison*, 251 F. Supp. 2d at 1321 n.6 ("[A] district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*.").

Nor does applying state joinder law mean that there will be a non-uniform determination of the removal rights of parties. On the contrary, the uniform rule is that properly joined third-party defendants may not remove cases to federal court, and that "fraudulently joined" third-party defendants may remove. Until Congress dictates otherwise, this rule of law appears most consistent with the principles governing removal. *See Elkhart Coop. Equity Exch.*, 716 F. Supp. at 1387 ("Despite the apparent appeal of these arguments to some, this court believes § 1441 should be read narrowly and that any resulting inequities in federal removal jurisdiction should be cured by legislation rather than judicial action.").

Thus, the Court will look to New York law to determine if there has been a fraudulent misjoinder of Twin City in the Third-Party Actions. Because Twin City does not allege outright fraud, it can prevail only if there is no reasonable possibility that a state court would find that the Third-Party Plaintiffs' claims against Twin City were properly joined with his claims against the other defendants.[17] *See Conk*, 77 F. Supp. 2d at 971.

Anticipating the possible application of state law, Twin City argues that "[t]hough federal law controls here, it bears noting that the result [improper joinder] should be no different under state law." (Twin City Opp'n Mem. 14) The relevant state law provision, N.Y. C.P.L.R. § 1007,

---

[17]As noted, the Court is not applying the "egregious joinder" standard first announced in *Tapscott*.

49

tracks Rule 14, and provides, in pertinent part: "After the service of his answer, a defendant may proceed against a person not a party who is or may be liable to that defendant for all or part of the plaintiff's claim against that defendant . . . ." N.Y. C.P.L.R. § 1007. However, in *George Cohen Agency, Inc. v. Donald S. Perlman Agency*, 51 N.Y.2d 358 (N.Y. 1980), the New York Court of Appeals rejected earlier narrow interpretations of § 1007: "On the other hand, there has been expressed in some lower courts a more liberal view of third-party practice generally. Such holdings . . . recognize that although third-party practice has its origins in strict indemnity, it has grown beyond its early limitations and should now be seen primarily as a tool for economical resolution of interrelated lawsuits. We agree with this broad view of the practice." *George Cohen Agency*, 51 N.Y.2d at 364-65 (internal citations omitted). *See also Gross v. DeMeglio*, 533 N.Y.S.2d 386, 388 (App. Div. 1988) (holding that third-party plaintiff who was sued for return of public assistance funds was allowed to bring third-party action against third-party defendant who purchased property with third-party plaintiff with ill-gotten funds because "any fraudulent conveyance . . . is highly relevant to and interrelated with the economical resolution of the primary action"). *But see Rausch v. Garland*, 451 N.Y.S.2d 913, 914 (App. Div. 1982) ("Although the impleader statute (CPLR 1007) is to be liberally construed to promote judicial economy and to avoid multiplicity of actions, it still remains that the third-party claim must be sufficiently related to the main action to at least raise the question of whether the third-party defendant may be liable to defendant-third-party plaintiff, for whatever reason, for the damages for which the latter may be liable to plaintiff.") (internal citations and quotations omitted).

Of course, the question of what a New York court might decide on this question is not abstract, for Justice Freedman explicitly permitted Third-Party Plaintiffs to bring the third-party

action against Twin City. *See Federal Ins. Co.*, 2004 WL 2805648, at *1 (citing *George Cohen Agency*, 51 N.Y.2d 358). In so doing, Justice Freedman noted that Twin City is one of the excess insurers providing insurance coverage to the Interpleader Defendants/Third-Party Plaintiffs, "and is thus potentially liable for some of or similar coverage to that plaintiff is obligated to afford." *Id.* Further, Justice Freedman observed that where some "part of the claim against" the defendant "may be satisfied by a third party (as here), third party impleader is permissible."[18] *Id.* Thus, in Justice Freedman's view, both Federal and Twin City may have a "shared responsibility" toward the insured, and, therefore, it was proper to permit Third-Party Plaintiffs to serve the Third-Party Actions. *Id.*

While Twin City is correct that Justice Freedman's order should not be construed as a final ruling that the third-party claims against it are properly brought under § 1007 (Twin City Opp'n Mem. 14-15), or that they at least should not be severed from the Interpleader Action, the order does at least suggest that Justice Freedman does not view the proposed third-party impleader as being facially baseless. For example, it may be that Justice Freedman viewed the Rescission and Interpleader Actions as interrelated and that the proposed impleader of Twin City was the most economical resolution of the common legal issues involving the coverage of the insured by Federal and Twin City. In this regard, it is important to remember that unlike the common interpleader plaintiff, Federal was not conceding that it owed an obligation to all of the Interpleader Defendants. Instead, Federal filed the defensive interpleader action only after Justice Freedman granted partial summary judgment to Kozlowski and required Federal to pay

---

[18]In this sentence of the order, it appears as though the reference to "plaintiff" should be to "defendant."

51

some of his Defense Costs. Thus, the question of whether any of the insurers owed any coverage to the Third-Party Plaintiffs was, and still is very much alive in state court.

That said, it is far from clear to this Court how Twin City's alleged obligations to Third-Party Plaintiffs are "sufficiently related to the main action to at least raise the question of whether the third-party defendant may be liable to defendant-third-party plaintiff." *Rausch*, 451 N.Y.S.2d at 914 (quotations omitted). Yet, this is unlike other remand motions where removal was accomplished before the state court had any say in the propriety of the joinder. Here, there is a ruling from the state court presiding not only over the Interpleader Action, but the related Rescission Action, explicitly inviting the impleader of Twin City. Thus, out of respect for the federalism interests that underlie removal jurisdiction, this Court is properly hesitant to review Justice Freedman's decision. *See Stan Winston Creatures*, 314 F. Supp. 2d at 182 ("A 'defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.'") (quoting 14B Wright, Miller & Cooper § 3721, at 331). Whether or not Justice Freedman's order would survive further scrutiny, it cannot be said that there is no reasonable possibility that Third-Party Plaintiffs might prevail on the unusual facts of this case in their effort to bring the Third-Party Actions against Twin City. *Cf.* 16 James Wm. Moore, et al., *Moore's Federal Practice* § 107.14 [2][c][iv][C] (3d ed. 2003) ("[W]hen reviewing a fraudulent joinder claim, a court has no responsibility to *definitively* settle ambiguous questions of state law. The correct practice is for the district court not to decide a doubtful question of state law in connection with a motion to remand, but simply to remand the case and leave the question for the

state courts to decide.").[19]

Accordingly, the Court finds that, because Twin City has failed to persuade this Court that it is a fraudulently joined Third-Party Defendant, Twin City has no statutory right to remove this action.

### B.  Whether This Court Has Original Jurisdiction Over This Action

Assuming it has a statutory right to remove, Twin City advances a number of arguments in support of its claim that this Court has original jurisdiction over this action.  First, Twin City argues that diversity jurisdiction exists under the "fraudulent joinder" doctrine.  Second, Twin City argues that diversity jurisdiction is present when the real parties in interest are properly realigned.  Finally, Twin City argues that interpleader jurisdiction is proper under 28 U.S.C. §

---

[19]  In further support of its fraudulent joinder claim, Twin City points out that "Kozlowski even supported his argument to the Supreme Court requesting leave to join Twin City by arguing that while Twin City had removed the Belnick Action, Twin City's common Indiana citizenship with Federal would bar Twin City from removing if added to the Interpleader Action."  (Twin City Opp'n Mem. 16 (citing Ex. H, Affirmation 3))  It is unclear that this argument has any legal significance.  As Justice Freedman noted in her order, the New York Court of Appeals has explicitly rejected the suggestion that a third-party complaint should not be permitted because it might undermine federal jurisdiction:

> Finally, Continental contends that Perlman's third-party complaint should be dismissed because it somehow impedes Continental's right, as a foreign corporation, to "remove" the case to Federal court pursuant to subdivision (c) of section 1441 of title 28 of the United States Code.  This contention is without merit.  The doctrine of "removal" is uniquely a Federal power to be exercised by Federal courts, applying Federal law.  We see no reason to alter the civil practice of the State of New York to either encourage or discourage the exercise of that power.  Thus, while a litigant may well believe that the exercise by the Federal court of its removal power would be beneficial in a particular case, his remedy is merely to seek such removal in Federal court, taking State procedure as he finds it.

*George Cohen Agency*, 51 N.Y.2d at 366-67.

1335.  The Court rejects these claims, concluding that there are sufficient doubts about the Court's jurisdiction to justify a remand, separate and apart from the Court's doubts about Twin City's statutory right of removal in this case.

<u>1.  Realignment and Diversity Jurisdiction</u>

Twin City argues that "Federal's citizenship does not count for purposes of ascertaining the presence of diversity, because Federal—as a mere interpleader plaintiff—is a 'nominal' party," (Twin City Opp'n Mem. 17) and that there is complete diversity when the remaining parties are realigned according to their true interests.  (Twin City Opp'n Mem. 18)

"It is a well settled general principle . . . that diversity jurisdiction must be based only on the citizenship of the real parties in interest, ignoring the citizenship of merely nominal or formal parties.  Parties that are considered nominal are those that have no personal stake in the outcome of the litigation and who are not necessary to an ultimate resolution."  *McAlpin v. RLI Ins. Co.*, 320 F. Supp. 2d 42, 43 (W.D.N.Y. 2004) (internal quotations and citations omitted).  *See generally* 13B Wright, Miller & Cooper § 3606, at 410-11 ("Cases arise in the Federal courts in which nominal or even immaterial parties are joined . . . and where that is so, the rule is settled that the mere fact that one or more of such parties reside in the same State with one of the actual parties to the controversy will not defeat the jurisdiction of the court.") (quoting *Walden v. Skinner*, 101 U.S. 577, 589 (1879)).

"The removing party bears the burden of demonstrating that a nondiverse defendant is a formal or nominal party whose citizenship may be ignored for diversity purposes."  *McAlpin*, 320 F. Supp. 2d at 43 (citations omitted).  The question of whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined.  *See,*

*e.g., Morris Assocs. v. Admiral Ins. Co.*, No. 04 Civ. 1757, 2004 WL 1065522, at *1 (S.D.N.Y.

May 11, 2004) ("The party that removed the action to federal court . . . has a heavy burden of

proving by clear and convincing evidence that a court should disregard the citizenship of a

non-diverse party, by setting forth one of the following:  (a) 'that there has been outright fraud

committed in the plaintiff's pleadings, or' (b) 'that there is no possibility based on the pleadings

[in the declaratory judgment action], that a plaintiff can state a cause of action against the

non-diverse defendants in state court.'") (citing *New York State Ins. Fund*, 2004 WL 385033, at

*2).

In addition, the Supreme Court has instructed that courts should realign parties to

determine diversity jurisdiction:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties'
> own determination of who are plaintiffs and who defendants.  It is our duty, as it
> is that of the lower federal courts, to look beyond the pleadings, and arrange the
> parties according to their sides in the dispute.  Litigation is the pursuit of practical
> ends, not a game of chess. Whether the necessary collision of interest exists, is
> therefore not to be determined by mechanical rules.  It must be ascertained from
> the principal purpose of the suit, and the primary and controlling matter in
> dispute. These familiar doctrines governing the alignment of parties for purposes
> of determining diversity of citizenship have consistently guided the lower federal
> courts and this Court.

*City of Indianapolis v. Chase Nat. Bank of New York*, 314 U.S. 63, 69-70 (1941) (internal

quotations and citations omitted).

In implementing these principles, the Second Circuit has adopted the "collision of

interests" test:

> In *Maryland Casualty*, the Second Circuit adopted the "collision of interests" test,
> which requires "the existence of an actual, substantial controversy, or a collision
> of interests," between citizens of different states.  The Second Circuit rejected the
> "primary purpose" test, which aligns parties in accordance with the "primary

dispute in the controversy." Rather, the "broader" and "more flexible" "collision of interests" test permits courts "to consider the multiple interests and issues involved in the litigation."

*Fed. Ins. Co. v. Safeskin Corp.*, No. 98 Civ. 2194, 1998 WL 832706, at *1 (S.D.N.Y. Nov. 25, 1998) (realigning corporation as "true" plaintiff and various insurance companies as "true" defendants) (quoting *Maryland Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993)).[20]

Under this test, for example, insurers are not required to be realigned so that they all stand adverse to the insured; rather, insurers may remain adverse to one another where their interests collide. *See Maryland Casualty*, 23 F.3d at 624; *see also Aetna Casualty & Surety Co.*, 44 F.

_____

[20] The Second Circuit's approach differs from that of other circuits:

> In interpreting *City of Indianapolis*, the circuits are split on whether to use the "primary purpose" test or the "substantial dispute" test to determine realignment. The Third, Fourth, Fifth, Sixth, and Ninth Circuits utilize the "primary dispute" test. These courts find that in a declaratory judgment action regarding insurance coverage, the parties should be realigned according to the primary dispute, with the insured on one side and the insurers on the other. Concomitantly, they find that contribution and allocation disputes between the insurers are secondary and hypothetical until the insurers' liability is determined.

> In contrast, the Second, Seventh, Eighth, and Tenth Circuits use the "substantial dispute" test. Applying this test to declaratory judgment insurance disputes, those circuits find that realignment is improper if there is any substantial conflict between opposing parties. Thus, where an insurer brings suit against its insured claiming no duty to provide coverage and against other insurers seeking contribution, the court must not realign the parties because the dispute between the plaintiff insurer and the defendant insurers constitutes a substantial dispute.

*Aetna Cas. & Sur. Co. v. Dow Chem., Co.*, 44 F. Supp. 2d 870, 874-75 (E.D. Mich. 1999) (internal citations and footnotes omitted).

Supp. 2d at 875 (explaining that under the test adopted by several circuits, including the Second Circuit, "where an insurer brings suit against its insured claiming no duty to provide coverage and against other insurers seeking contribution, the court must not realign the parties because the dispute between the plaintiff insurer and the defendant insurers constitutes a substantial dispute") (citing *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1 (1st Cir. 1988)). However, courts within this district have also found that where an insurer has "failed to demonstrate the existence of an actual, substantial conflict between itself and the other insurers," realignment of the parties so that all insurance companies are adverse to the single insured corporation is appropriate. *Safeskin Corp.*, 1998 WL 832706, at *2.

Twin City argues that "[a]n interpleader plaintiff fits squarely within th[e] definition of a 'nominal party.' Indeed, the very concept of an interpleader action is that the interpleader plaintiff—the 'disinterested stakeholder'—will deposit the stake to which competing claims exist into court in order to avoid potential liability." (Twin City Opp'n Mem. 17) There is broad support for this claim. *See Alling v. C.D. Cairns Irrevocable Trusts P'ship*, 889 F. Supp. 768, 770 (D. Vt. 1995) ("In this interpleader, it is clear that the true collision of interests lies between Cairns and Mobil, the two potential purchasers of Alling's property. Alling is merely the formal plaintiff in this matter and, as such, may be disregarded for purposes of determining diversity."); *accord Tune, Entrekin & White v. Magid*, 220 F. Supp. 2d 887, 889 (M.D. Tenn. 2002) ("In an interpleader case, the nominal plaintiff is merely formal and should be disregarded for purposes of determining diversity."); *Hidey v. Waste Sys. Int'l*, 59 F. Supp. 2d 543, 545-46 (D. Md. 1999) (following *Alling* and realigning competing interpleader claimants opposite one another).

Twin City maintains that with Federal out of the picture, after application of the

"collision of interests" test to realign the parties, there is complete diversity.[21]  Twin City argues that "[i]t is somewhat difficult to apply these principles here because . . . the Third-Party Actions have no nexus with the Interpleader Action as it existed prior to the joinder of Twin City as a party."  (Twin City Opp'n Mem. 19)   However, Twin City goes on to identify two realignments that satisfy the complete diversity requirement.

First, Twin City argues that "a real and substantial dispute exists between Twin City and its insured concerning the availability of coverage under the Twin City Policy."  (Twin City Opp'n Mem. 19)  Thus, Twin City maintains an appropriate realignment is:  Tyco (UK or NY), Belnick (Utah or NY), Kozlowski (FL), Swartz (FL), Walsh (NJ) v. Twin City (IN & CT).  Viewing the parties this way, there appears to be complete diversity.

Alternatively, Twin City argues that "if the issue set forth in the initial Interpleader Complaint is viewed as the 'primary issue in dispute,' then the parties should be realigned according to the most salient fissure among their competing claims to Federal's stake."  (Twin City Opp'n Mem. 20 (citing *Alling*, 889 F. Supp. at 770))  Twin City points to the fact that Tyco filed a cross-complaint in the *Interpleader Action* against its former directors and officers, and

---

[21]The same realignment, Twin City argues, makes it a defendant for purposes of exercising its statutory removal rights under § 1441.  (Twin City Opp'n Mem. 27-28)  Indeed, there is ample authority that suggests that realignment is appropriate to determine both diversity jurisdiction and the proper labeling of the parties for removal purposes.  *See Green Tree Fin. Corp. v. Arndt*, 72 F. Supp. 2d 1278, 1282 (D. Kan. 1999) ("Realignment is usually associated with a federal court's attempt to discern whether diversity jurisdiction is proper.  The principle has also been employed by numerous courts in the removal context.").  However, Twin City's argument for realignment for removal purposes only survives if there was a fraudulent joinder, which Twin City has failed to substantiate.  *See Schwartz v. Liberty Mut. Ins. Co.*, No. 01-2049, 2001 WL 1622209, at *6 (E.D. Pa. Dec. 18, 2001) ("[T]he Supreme Court in *City of Indianapolis* was guided by the policy of preventing parties from manipulating federal jurisdiction.  That concern weighs against realignment here.  As discussed, the petitioners have a non-frivolous basis for joining Keystone.").

accordingly, suggests that "Tyco should be realigned as the true plaintiff and that the individual insured should be realigned as the true defendants." (Twin City Opp'n Mem. 20) While acknowledging that "Twin City and Tyco are technically adverse" (Twin City Opp'n Mem. 20 n.20), Twin City argues that it is more appropriately realigned as a plaintiff since its interests are "more consonant with Tyco" given that the "coverage dispute is more focused on the enforceability of certain endorsements that exclude and/or limit coverage to the Movants." (Twin City Opp'n Mem. 20 n.20). Thus, the resulting alignment would be: Tyco (UK or NY) and Twin City (IN & CT) v. Belnick (UT or NY), Kozlowski (FL), Swartz (FL), Walsh (NJ).

The Court is unpersuaded by the argument that Twin City is properly aligned with Tyco as a plaintiff. First, under this scenario, it might matter whether New York is deemed Tyco's principal place of business, and, likewise, whether Belnick is a citizen of Utah or New York. Obviously, if Tyco and Belnick are New York citizens, then the Court would lack diversity jurisdiction over this realigned case. At a minimum, the jurisdictional facts as alleged in the Interpleader Complaint raise serious doubts about the Court's jurisdiction in this scenario, thus supporting remand. *See Jamison*, 251 F. Supp. 2d at 1318 ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."). Second, by placing itself as the putative plaintiff in this scenario, Twin City disqualifies itself from having any statutory removal rights because only defendants have such rights under § 1441(a). *See Shamrock Oil*, 313 U.S. at 108 (holding that plaintiff/counterclaim defendant may not remove). Therefore, this realignment does not support Twin City's removal.

Thus, the only plausible realignment scenario is the first one, pitting Third-Party

Plaintiffs as true plaintiffs and Twin City as the true defendant. However, it is far from clear that Federal is a typical disinterested stakeholder/plaintiff in an interpleader action. It bears remembering that Federal filed a defensive Interpleader Complaint, pursuant to N.Y. C.P.L.R. § 1006(b), only after it partially lost the first round of litigation with Kozlowski. However, the legal battle between Federal and Kozlowski continues until this day, making it clear that Federal has a stake in the $25 million policy. Thus, the Interpleader Action is not the typical case where the stakeholder is indifferent to the disposition of the funds at issue. Indeed, the Interpleader Complaint specifically notes Federal's belief that it owes no "Defense Costs" to certain of the Interpleader Defendants. As Third-Party Plaintiffs note, "Federal has not deposited money in the Court, and continues to contest that it is liable for the disputed sums." (Third Party Pls.' Reply Mem. 9) Accordingly, there is reason to view Federal as an interested stakeholder, thus requiring the Court to consider its citizenship. *See Lummis v. White*, 629 F.2d 397, 403 (5th Cir. 1980) ("[W]e hold that the citizenship of an interested stakeholder may be considered for purposes of establishing diversity under section 1335."), *rev'd on other grounds*, *Cory v. White*, 457 U.S. 85 (1982); *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.*, 695 F. Supp. 469, 473 (C.D. Cal. 1987) (same). Therefore, to the extent Twin City's claim of diversity depends on ignoring the citizenship of Federal (which like Twin City is an Indiana citizen, and which like Walsh is also a citizen of New Jersey), then the argument is insufficiently free of doubt for remand purposes.[22]

---

[22]Twin City could argue that further realignment, based on the collision of interests, might result in a remodeled law suit of Third-Party Plaintiffs as true plaintiffs against Federal and Twin City as true defendants, but even this would not change the result. First, even if this realignment might create diversity jurisdiction (which is questionable), Twin City's removal would be deficient in the absence of consent by Federal, which has not happened, and, given Federal's request to remand the Interpleader Action, is not likely to happen. Thus, the unanimity rule would be violated and the removal would be improper. *See In re WorldCom, Inc. Sec. Litig.*,

60

## 2. Jurisdiction Under the Interpleader Statute

Twin City independently argues that the Court has original jurisdiction over the Interpleader Complaint pursuant to 28 U.S.C. § 1335, and, accordingly, this action is removable under 28 U.S.C. § 1441(b).[23] This argument also fails.

---

2003 WL 22383090, at *1. Second, there is no reason the Court would be required to realign the parties to make Twin City and Federal the defendants. The collision of interests in the dispute between the parties is a classic disagreement between insurers and the insured over the scope of insurance coverage. As such, it is just as feasible to realign the parties to make Twin City and Federal the plaintiffs and the insured the defendants. *See The Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) ("[T]he normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."); *U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*, 48 F.3d 131, 134 (4th Cir. 1995) (affirming district court's realignment in insurance dispute to deem insurers to be plaintiffs and insured to be defendant).

Furthermore, if Twin City is realigned to become a plaintiff, as noted above, it would have no removal rights. Given the axiom that the Court is to strictly construe the removal statute, where realignment does not require the removing party to be viewed as the defendant, the courts have refused to engage in jurisdictional gymnastics to accept removed actions. *See, e.g.*, *Tune, Entrekin & White*, 220 F. Supp. 2d at 892 ("Faced with such a decision [over how to realign the parties], this Court finds persuasive those courts which have simply declined to realign the parties at all. Given that federal jurisdiction and removal statutes are supposed to be strictly construed, the Court should err in favor of remanding and allowing the state court to either decide the case or realign the parties."); *O'Keefe, Ashenden, Lyons & Ward v. Nat'l Telecomm. Consultants, Inc.*, No. 91 C 2688, 1991 WL 140130, at *1 (N.D. Ill. July 22, 1991) ("Because there is no reason why TotalCom would not be a defendant in any realigned action, other than a deliberate choice by this court made solely to retain jurisdiction, the court declines NTC's invitation to realign the parties. This court's jurisdiction is then precluded by § 1441(b)."). *But see Hidey*, 59 F. Supp. 2d at 546 (holding it proper to realign parties in an interpleader action so that their rights to removal were the same as they would have been absent artificial alignment.).

[23]There are two avenues for filing an interpleader action in federal court: (1) rule interpleader, pursuant to Federal Rule of Civil Procedure 22; and (2) statutory interpleader, pursuant to 28 U.S.C. § 1335. Section 1335 provides, in pertinent part:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or

61

Statutory interpleader "calls for diversity of citizenship between two or more of the adverse claimants and requires that the amount in controversy . . . need only be $500." 7 Wright, Miller & Cooper § 1703, at 538. "The citizenship of the stakeholder is irrelevant for jurisdictional purposes in statutory-interpleader actions." *Id.*; *see also Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994) ("The interpleader statute, 28 U.S.C. § 1335, applies only where there is 'minimal diversity,' *i.e.*, where there are '[t]wo or more adverse claimants of diverse citizenship. . . .'") (quoting *Tashire*, 386 U.S. at 530). In this case, there appears to be no question that the "minimal diversity" requirement is satisfied—Belnick (NY or UT), Walsh (NJ), and Kozlowski/Swartz (FL) being of diverse citizenship.

There are two primary hurdles to Twin City's ability to remove on the basis of original jurisdiction pursuant to Section 1335. First, there appears to be an open question as to whether removal is permissible under Section 1441 where the basis for original jurisdiction is Section 1335 statutory interpleader with its "minimal diversity" requirement. Second, this Court appears

---

more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

to lack jurisdiction under Section 1335 because Federal has not deposited the disputed funds.

### a.  Whether Removal Is Authorized Under Section 1441

_____While Third-Party Plaintiffs do not explicitly advance the argument, courts appear to be divided on the question of whether removal is permitted under Section 1441 where the basis for original jurisdiction is statutory interpleader.  The division focuses around the issue of whether an action can be removed under Section 1441 where there is only minimal (and not complete) diversity between the parties.  *See generally N. Trust Co. v. Ferguson*, No. 97 C 2223, 1997 WL 405418, at *1 n.1 (N.D. Ill. July 14, 1997) (explaining that the court did "not reach the question of the interplay between interpleader law and the removal statute," and noting the different conclusions reached on this question in *Community Title Co. v. Lieberman Mgmt. Co.*, 719 F. Supp. 869 (E.D. Mo. 1989) and *Albers v. IRS*, No. 4:CV 95-3068, 1996 WL 196657 (D. Neb. Feb. 15, 1996), *aff'd on other grounds*, 105 F.3d 662 (table), 1997 WL 2477 (8th Cir. Jan. 6, 1997)).

In *Albers*, the court found that removal of an action over which there is original jurisdiction pursuant to § 1335 is proper under 28 U.S.C. § 1441.[24]  *Albers*, 1996 WL 196657, at

---

[24] The conclusion in *Albers* arguably is *dicta*.  The court there concluded that "[e]ven if, however, subject-matter jurisdiction is lacking under the statutory interpleader provisions of Section 1335, subject-matter jurisdiction may also be based on federal-question jurisdiction."  *Albers*, 1996 WL 196657, at *2.

A number of the other cases cited by Twin City do not appear to support the claim that a party may remove a case over which there is original jurisdiction pursuant to § 1335, as they do not explicitly address this issue.  *See Knox v. Am. Gen. Life & Accident Ins. Co.*, No. 03-CV-0029, 2003 WL 22056301, at *3 (S.D. Ind. Aug. 28, 2003) (discussing the requirements of § 1335, and whether there is diversity of citizenship between the claimants in that case); *Boatmen's First Nat'l Bank of Kansas City v. McCoy*, 861 F. Supp. 846, 848 (W.D. Mo. 1994) ("Therefore, the diversity requirement of statutory interpleader has not been met in this case.").

*2.  In contrast, in *Community Title*, the court concluded such removal was improper:

> Section 1335, however, only extends this Court's original jurisdiction to embrace actions that correspond to those described in the federal interpleader statute.  It does not provide authority to *remove* to federal court actions that were filed in state courts which could have originally been filed in federal court.  Rather, this Court must look to 28 U.S.C. § 1441 for authority to remove an action from state court to federal court. . . .   In all other cases [other than where a federal question exists] over which district courts have original jurisdiction, the basic principles of diversity jurisdiction, *including the requirement of 'complete diversity,'* govern the removability of the action. . . .  This Court concludes, however, that § 1335 does not provide the type of substantive right requisite to the existence of federal question jurisdiction.  The federal interpleader statute is jurisdictional.  It simply grants district courts original jurisdiction over cases that fit the description provided in § 1335, and provides a forum in which adverse claimants to a fund can determine their rights in a single proceeding.

719 F. Supp at 870-71 (citations omitted); *see also Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, No. Civ. A. 98-3080, 1998 WL 850531, at *2 n.2 (E.D. La. 1998) (citing rule from *Community Title*).

In addition, a number of cases take the view that the limitation of § 1441(b) that "[a]ny other such action [that is, actions other that those 'arising under the Constitution, treaties or laws of the United States'] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought" applies to cases where a party alleges original jurisdiction pursuant to § 1335.  28 U.S.C. § 1441(b); *see also Mid-Century Ins. Co. v. Menking*, 327 F. Supp. 2d 1049, 1051 n.1 (D. Neb. 2003) ("Although [28 U.S.C. § 1335] does allow for original federal jurisdiction over interpleader actions, removed interpleader actions are still restricted by 28 U.S.C. § 1441(b), the removal statute.  Section 1441(b) does not permit removal of any action not based on a federal question when at least one defendant is a citizen of the state in which the action is brought."); *State Farm Fire and Cas. Co.*

*v. Saunders*, No. 02-2121, 2002 WL 1351556, at *2 (D. Kan. June 17, 2002) ("Moreover, even if the court would have had original jurisdiction over this action, the restrictions in § 1441(b) still apply to removal under the diversity jurisdiction of § 1335. As explained above, § 1441(b) bars removal of this case because the defendants are all citizens of the state in which the action was brought.") (citing cases); *Mandalay Oil & Gas*, 1998 WL 850531, at *2 ("There is no support for the proposition that the restrictions in § 1441(b) apply to removal under the diversity jurisdiction of § 1332, but do not apply to removal under the diversity jurisdiction of § 1335. The words of the statute show that it applies to the removal of *all* cases of which the federal courts would have original jurisdiction—federal question actions and 'Any other such action.' It is axiomatic that removal statutes are to be strictly construed against removal . . . .")

To the extent Belnick is considered a resident of New York, as is alleged in the Interpleader Complaint, these cases suggest that removal pursuant to § 1335 is improper, given that "at least one defendant is a citizen of the state in which the action is brought [New York]." *Mid. Century Ins.*, 327 F. Supp. 2d 1051 n.1 (construing 28 U.S.C. § 1441(b)). More generally, these cases suggest that, as argued in *Community Title*, the requirement of complete diversity applies to removal where there is original jurisdiction pursuant to § 1335—that is, § 1335 cases fall into the category of "[a]ny other such action" (rather than federal question cases), and accordingly complete diversity is required. *Community Title*, 719 F. Supp. at 871.

The Second Circuit does not appear to have addressed this issue. While other courts do not appear to have adopted a clear majority rule, the balance of authority suggests that a party may not remove a case that could have originally been brought in federal court under § 1335 where there is not complete diversity. *See* 14 Wright, Miller & Cooper § 3636, at 78-79 ("It also

remains true that interpleader actions brought under state law and then removed to federal court must satisfy the requirements of rule interpleader, including complete diversity of citizenship."). Accordingly, there are substantial doubts about whether Twin City can remove, pursuant to § 1441, based on its claim of original jurisdiction under the federal interpleader statute.

### b.  Jurisdictional Doubts from Lack of Deposited Funds

Apart from the question of whether *removal* of a Section 1335 action is proper, Third-Party Plaintiffs maintain that this Court lacks jurisdiction under Section 1335 because Federal has not deposited the amount in controversy (some $25 million) with the registry of any Court.[25] (Third-Party Pls.' Mem. 5)  As noted above, the second requirement of the interpleader statute is the deposit of funds.  The deposit of such funds is a jurisdictional requirement.  In *Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, the Second Circuit explained:

> As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants.  Section 1335 gives the district courts jurisdiction over such actions when a stakeholder has in his possession money or property 'of the value of $500 or more,' if 'two or more * * * claimants * * * are claiming or may claim to be entitled to such money or property' and if the stakeholder 'has deposited such money * * * into the registry of the court.'  This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim.

288 F.2d 363, 365 (2d Cir. 1961) (citing cases).  The view that this requirement is jurisdictional has been consistently adopted in this Circuit.  *Coopers & Lybrand, L.L.P. v. Michaels*, No. 94-

---

[25] To the extent the Court finds that there is original jurisdiction apart from § 1335, based on the theories of fraudulent joinder and realignment outlined above, there is no deposit requirement for rule interpleader.  *See, e.g.*, *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) ("Unlike statutory interpleader, 28 U.S.C. § 1335, which requires a stakeholder to deposit the asset with the court, deposit of the asset is not a jurisdictional prerequisite for rule interpleader.").

CV-5643, 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995) (explaining that "a jurisdictional prerequisite to statutory interpleader 'is that the stakeholder deposit a bond in the highest amount that the claimants "are claiming or may claim to be entitled""") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Ambassador Group, Inc.*, 691 F. Supp. 618, 621 (E.D.N.Y. 1988)) (citing cases).

Twin City cites to *Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.*, No. 84 Civ. 3728, 1984 WL 635 (S.D.N.Y. July 16, 1984) in support of its claim that the deposit requirement is not absolute, but flexible. (Twin City Opp'n Mem. 22) In *Price*, the Court noted:

> Practically speaking, deposit is not a prerequisite to obtaining jurisdiction, but rather, a condition of maintaining it. Otherwise, no Court would have the power to even order a fund deposited thereby ensuring its continued control over the matter. . . .
>
> The purpose of the deposit requirement is to assure the safety of the disputed stake, thereby facilitating enforcement of the Court's ultimate judgment. Cases which have held failure to deposit a fund to be a jurisdictional defect, generally involve plaintiff's [sic] who deliberately withhold funds. Accordingly, where deposit is not required for security by the stakeholder, it should not be a jurisdictional condition.

*Id.* at *2-3. To the extent that *Price* stands for the proposition that the deposit requirement is not jurisdictional, this does not appear to find support in the case law: "[*Price*] and authority quoted therein predate *National Fire Union*. Moreover, since *National Fire Union*, courts in the Second Circuit have consistently followed the rule that a deposit or a bond is a jurisdictional prerequisite for statutory interpleader relief." *Coopers & Lyrand*, 1995 WL 860760, at *10 (citing cases).

While the deposit requirement may be jurisdictional, however, "it is equally clear that the failure to deposit the stake with the Court's registry alone would not warrant outright dismissal of the interpleader action for lack of jurisdiction. Rather, it would be error to dismiss the complaint

'without affording an opportunity to cure.'" *Travelers Ins. Co. v. Estate of Zenifer Garcia*, No. 00-CV-2130, 2003 WL 1193535, at *3 (E.D.N.Y. Feb. 4, 2003) (quoting *United States Fire Ins. Co. v. Absestospray, Inc.*, 182 F.3d 201, 210 n.4 (3d Cir. 1988)) (additional citations omitted); *see also Nat'l Union Fire*, 691 F. Supp. at 621 ("On this basis [failure to deposit with the court the highest amount claimed by defendants] alone, this Court must conclude that it lacks jurisdiction over the instant interpleader action. Rather than dismiss the action, however, the Court will give National Union an opportunity to post the appropriate amount . . . ."); *Knox v. Am. General Life & Acc. Ins. Co.*, No. 1:03-CV-0029, 2003 WL 22056301, at *4-5 (S.D. Ind. Aug. 28, 2003) ("The interpleader statute explicitly conditions jurisdiction on the stakeholder . . . having deposited with the registry of the court the money that is subject to multiple claims. . . . In the event that a stakeholder fails to deposit funds when filing the interpleader action, a court may give the party an opportunity to comply before dismissing interpleader for failure to satisfy a jurisdictional requirement. [Plaintiff] has clearly stated its willingness to deposit the undisputed $25,000 with the court, which makes remand of this action to state court on this basis alone inappropriate.") (internal citations omitted); *cf. Phillips, Son & Neal, Inc. v. Borghi & Co.*, No. 86 Civ. 8544, 1987 WL 27690, at *2 (S.D.N.Y. Dec. 7, 1987) ("Although courts generally do not dismiss an interpleader action solely on the grounds that the money or property has not been deposited with the court, plaintiff's failure to deposit the drawings with the Court is not the only barrier to interpleader jurisdiction in this action." (internal citations omitted)); *Coopers & Lybrand*, 1995 WL 860760, at *9 ("Moreover, [plaintiff] has made no showing that it is able or willing to post bond for such an amount.").

Thus, while deposit of funds appears to be a jurisdictional requirement, it could be argued

that Federal should be given an opportunity to deposit such funds before this Court considers whether dismissal is appropriate. However, at argument, the Court inquired of counsel for Federal if such a deposit would be forthcoming. Counsel demurred (Tr. 45-46, July 28, 2005), and then indicated a strong desire to send the Interpleader Action back to state court (Tr. 55, July 28, 2005), which Court ultimately did on the consent of the parties. Given these circumstances, it is fair for the Court to infer that Federal will not deposit the funds and, therefore, that there is palpable doubt that the Court has the jurisdiction to retain the Interpleader Action under Section 1335.

In sum, while Twin City has made an admirable effort at demonstrating that this Court has jurisdiction over the removed action, the effort is not sufficiently free of doubt to justify denial of the remand motion. *See Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 176 (S.D.N.Y. 2003) ("The defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand.") (quoting 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.05 (3d ed. 2003)).

C.  Imposition of Attorneys' Fees

Finally, Third-Party Plaintiffs argue that "[b]ecause Twin City has absolutely no basis for removal this Court should impose on Twin City movants' costs of this motion pursuant to 28 U.S.C. § 1447(c)."[26]  (Third-Party Pls.' Reply Mem. 6)

The Court has no difficulty in rejecting this claim. Section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees." *Morgan*

---

[26]That provision provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

*Guar. Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992). The

Supreme Court recently clarified the standard to be used in determining the award of fees under

Section 1447(c): "Absent unusual circumstances, courts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

removal." *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 711 (2005).

Here, even though the Court grants the Motion to Remand, the grounds for removal are

substantial, particularly in light of the unusual facts and the number of complicated questions

raised in this case which have not been explicitly resolved by the Second Circuit. Accordingly,

the Court finds that there was an objective basis for Twin City to seek removal, as reflected in its

well-presented opposition to the Motion to Remand. Therefore, the Motion for Attorneys' Fees

is DENIED.

### III. Conclusion

For the reasons set forth above, the Motion to Remand is GRANTED, but the Motion for

Attorneys' Fees is DENIED.

SO ORDERED.

Dated:      March 21, 2006
            New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

70

Service List:
Paul B. Sweeney, Esq.
David J. Hensler, Esq.
David Newmann, Esq.
Michael Steinberg, Esq.
Hogan & Hartson, L.L.P.
New York, New York and Washington, D.C.
*Counsel for Federal Insurance Company*

Nicholas J. Zoogman, Esq.
John P. Winsbro
Dickstein Shapiro Morin & Oshinsky LLP
New York, New York
*Counsel for Plaintiff Mark A. Belnick*

Jean M. Farrell, Esq.
Jeffrey E. Glen, Esq.
Anderson Kill & Olick, P.C.
New York, New York
*Counsel for Defendant L. Dennis Kozlowski*

Milton Thrum, Esq.
Stacy Steinberg, Esq.
Molod Spitz & DeSantis, P.C.
New York, New York
*Counsel for Defendant Mark H. Swartz*

Charles D. Donohue, Esq.
Jennifer A. Klear, Esq.
Douglas M. Mangel, Esq.
Brian A. Coleman, Esq.
Alison M. Jarandeh, Esq.
Drinker Biddle & Reath LLP
New York, New York and Washington, D.C.
*Counsel for Defendant Twin City Fire Insurance Company*